IN THE
UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF MARYLAND

(Greenbelt Division)

| | | |
|---|---|---|
| ANTHONY ROBINSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | Civil Action No. 8:15-cv-00079-GJH |
| PENNSYLVANIA HIGHER | ) | |
| EDUCATION ASSISTANCE | ) | |
| AGENCY, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY'S**
**BRIEF IN SUPPORT OF MOTION TO DISMISS COMPLAINT**

Joseph P. Esposito (Md. Fed. Bar No. 05927)
HUNTON & WILLIAMS LLP
2200 Pennsylvania Ave N.W.
Washington, D.C. 20037-1701
Telephone: (202) 955-1500
Facsimile: (202) 778-2201
jesposito@hunton.com

Jill Marie deGraffenreid (Md. Fed. Bar No. 13536)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia 22102
Telephone: (703) 714-7400
Facsimile (703) 714-7410
jdegraffenreid@hunton.com

*Counsel for Defendant Pennsylvania Higher Education Assistance Agency*

**TABLE OF CONTENTS**

I    INTRODUCTION .................................................................................................1

II.   PROCEDURAL HISTORY AND FACTS ALLEGED IN COMPLAINT .......................2

III.  ARGUMENT  ROBINSON'S CLAIMS ARE BARRED BY THE ELEVENTH
      AMENDMENT..........................................................................................................3

      A.    States and state agencies are immune from suits in federal court...........................3

      B.    PHEAA's formation and purpose. .......................................................................3

      C.    Application of the Fourth Circuit's arm-of-the-state test. ......................................4

            a.    Pennsylvania controls PHEAA through PHEAA's Board of
                  Directors................................................................................................8

            b.    Pennsylvania controls PHEAA financially.................................................9

            c.    Pennsylvania controls PHEAA through the Attorney General.................10

            d.    Pennsylvania controls PHEAA through the General Assembly. ...............11

      D.    If the Court declines to hold, on a 12(b)(6) motion, that PHEAA is a State
            agency, then it should stay all proceedings against PHEAA until the
            Fourth Circuit has ruled on this issue in Pele and Oberg.......................................16

IV.   FCRA PREEMPTS ROBINSON'S DEFAMATION CLAIM.........................................16

V.    CONCLUSION ......................................................................................................17

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Alston v. United Collections Bureau, Inc.*,
  No. DKC 13-0913,  WL 859013 (D. Md. Mar. 4, 2014)........................................17

*Bd. of Trustees of the University of Alabama v. Garrett*,
  531 U.S. 356 (2001)......................................................................................3

*Beachley v. PNC Bank, N.A.*,
  No. JKB-10-1774, 2011 WL 3705239 (D. Md. Aug. 22, 2011)..........................17

*Betts v. Commonwealth of Virginia.*,
  No. 3:06cv753, 2007 WL 515406.................................................................1

*Chambers v. Pennsylvania Higher Education Assistance Agency*,
  Case No. 1:15-cv-0073-YK (M.D. Pa.) .........................................................10

*Chao v. Virginia Department of Transportation*,
  291 F.3d 276 (4th Cir. 2002) .....................................................................1

*College Savings Bank v. Florida Prepaid Postsecondary Education Expense Bd.*,
  527 U.S. 666 (1999)..........................................................................1, 11, 13

*Hall v. Medical College of Ohio at Toledo*,
  742 F.2d 299 (6th Cir. 1984) ....................................................................11

*Harden v. Adams*,
  760 F.2d 1158 (11th Cir. 1985) .................................................................12

*Hess v. Port Authority Trans-Hudson Corp.*,
  413 U.S. 30 (1994).....................................................................................7

*Hutto v. South Carolina Retirement System*,
  773 F.3d 536 (4th Cir. 2014) ....................................................................16

*Jackson v. Hayakawa*,
  682 F.2d 1344 (9th Cir. 1982) ..................................................................11

*Md. Stadium Authority v. Ellerbe Becket, Inc.*,
  407 F.3d 255 (4th Cir. 2005) ............................................................ *passim*

*Michigan v. United States*,
  40 F.3d 817 (6th Cir. 1994) .......................................................................6

*Northern Insurance Co. of New York v. Chatham County, Georgia*,
  547 U.S. 189 (2006)...................................................................................3

*Pennsylvania Department of Revenue v. Bookser*,
    3 Pa. D. & C.4th 566 (Pa. C.P. Allegheny Cty. 1989).........................................15

*Pele v. Pennsylvania Higher Education Assistance Agency*,
    53 F. Supp. 3d 857 (E.D. Va. 2014) ...................................................... *passim*

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984)...........................................................................................3

*PHEAA v. Barksdale*,
    449 A.2d 688 (Pa . Super. 1982).......................................................................15

*PHEAA v. Reid*,
    15 Pa. D. & C. 3d 661 (Ct. Comm. Pleas 1980) ............................................2, 15

*PHEAA v. Xed*,
    456 A.2d 725 (Pa. Cmwlth. 1983) ....................................................................15

*Richmond v. PHEAA*,
    297 A.2d 544 (Pa. Commw. Ct. 1972) ..............................................................15

*Rutledge v. Arizona Board of Regents*,
    660 F.2d 1345 (9th Cir. 1981) ......................................................................9, 12

*South Carolina Department of Disabilities & Special Needs v. Hoover Universal, Inc.*,
    535 F.3d 300 (4th Cir. 2008) ......................................................................6, 8, 9

*Skehan v. State System of Higher Education*,
    815 F.2d 244 (3d Cir. 1987)..........................................................................9, 12

*Tradigrain, Inc. v. Mississippi State Port Authority*,
    701 F.2d 1131 (5th Cir. 1983) .....................................................................11, 12

*United States ex rel. King v. University of Texas*,
    544 F. App'x 490 (5th Cir. 2013) ..................................................................6, 10

*United States ex rel. Lesinski v. South Florida Water Management District*,
    739 F.3d 598 (11th Cir. 2014) .............................................................................7

*United States ex rel. Oberg v. Kentucky Higher Education Student Loan Corp.*,
    681 F.3d 575 (4th Cir. 2012) .....................................................................4, 7, 14

*United States ex rel. Oberg v. Pennsylvania Higher Education Assistance Agency*,
    745 F.3d 131 (4th Cir. 2014) .............................................................. *passim*

*United States ex rel. Oberg v. Pennsylvania Higher Education Assistance Agency*,
    No. 1:07-CV-00960, 2015 WL 236630 (E.D. Va. Jan. 16, 2015), ................. *passim*

STATUTES

24 P.S. §§ 25-2599.4 ................................................................................................4, 12

24 P.S. § 5101 ......................................................................................................13, 14

24 P.S. §§ 5101-5199 ...................................................................................................1

24 P.S. § 5101 *et seq.* ............................................................................................10, 11

24 P.S. § 5102 ......................................................................................................4, 12

24 P.S. § 5103 ................................................................................................................8

24 P.S. § 5104(1) ..........................................................................................................5

24 P.S. § 5104(1.1) ....................................................................................................5, 6

24 P.S. § 5104(1.2) ........................................................................................................5

24 P.S. § 5104.3 ......................................................................................................10, 15

24 P.S. § 5104(3) ........................................................................................................5, 9

24 P.S. § 5104(6) ..........................................................................................................15

24 P.S. § 5104(8) ............................................................................................................5

24 P.S. § 5104(10)(ii)-(iii) ..........................................................................................14

24 P.S. § 5105.1 ....................................................................................................5, 9, 12

24 P.S. § 5105.6 ..........................................................................................4, 11, 12, 14

24 P.S. § 5105.10 ............................................................................................................6

24 P.S. § 5107 ..............................................................................................................14

24 P.S. § 5108 ......................................................................................................6, 9, 12

24 P.S. § 5109 ......................................................................................................6, 15

24 P.S. § 5112 ......................................................................................................3, 14

24 P.S. § 5151 ......................................................................................................4, 12

24 P.S. § 5152 ......................................................................................................4, 12

24 P.S. § 5197 ................................................................................................4, 12, 15

24 P.S. § 5198.6 ..............................................................................................4, 12, 15

24 P.S. § 5199.8(g) ..................................................................................................15

24 P.S. § 7103 ...............................................................................................................4, 12

24 P.S. § 7203 ...............................................................................................................4, 12

62 P.S. § 1303 ...............................................................................................................4, 12

65 P.S. § 67.102 .......................................................................................................15

71 P.S. § 111.2(a)(1) .................................................................................................9

71 P.S. §111.2(b)(1) ..................................................................................................8

71 P.S. § 732-102 ....................................................................................................10

71 P.S. § 732-204(f) .................................................................................................10

71 P.S. § 776.2 ..........................................................................................................15

72 P.S. § 306 .................................................................................................................5

72 P.S. § 307 .......................................................................................................5, 6, 9

72 P.S. § 1501 .............................................................................................................5

72 P.S. § 1502 .............................................................................................................5

72 P.S. § 1714-E.1 ...............................................................................................4, 12

72 P.S. § 1738-E .................................................................................................4, 12

72 P.S. § 1738-J .................................................................................................4, 12

73 P.S. § 400.3102 .............................................................................................4, 12

15 U.S.C. § 1681 *et seq.* .............................................................................. passim

20 U.S.C. § 1085(j) .............................................................................................13, 14

42 Pa. C.S.A. § 761 .................................................................................................15

65 Pa. C.S.A. § 703 .................................................................................................15

65 Pa. C.S.A. §§ 1101 *et seq.* ...............................................................................8

65 Pa. C.S.A. § 1102 .............................................................................................15

71 P.A. § 732-204(a) ...................................................................................................11

71 P.A. § 732-204(c) ...................................................................................................10

71 Pa. C.S.A. § 5301 ...................................................................................................15

71 Pa. C.S.A. § 5102 ...................................................................................................15

### OTHER AUTHORITIES

22 PA. CODE § 121.9(b) ...............................................................................................15

Pa. Const. art. III, § 29 ........................................................................................3, 11, 14

Pa. Const. art. VI, §7 ....................................................................................................8

PA. R.A.P. 106 .............................................................................................................15

U.S. Const. amend. XI .......................................................................................... *passim*

# I.
## INTRODUCTION

The Plaintiff, Anthony Robinson, is suing the Pennsylvania Higher Education Assistance Agency ("PHEAA") for alleged violations of the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*., as well as for defamation.  His lawsuit, however, is barred by the Eleventh Amendment to the United States Constitution.  Moreover, in addition to being barred by sovereign immunity, Plaintiff's defamation claim is preempted by FCRA.

The Eleventh Amendment guarantees States and their agencies immunity from being sued in federal court.  This immunity reflects "the principle that the State possesses a 'residuary and inviolable sovereignty' that the Constitution preserved," and it provides the States the respect due them "as members of the federation."  *Betts v. C'wealth of Va.*, No. 3:06cv753, 2007 WL 515406, at *6 (E.D. Va. Feb. 2, 2007 (quoting *Chao v. Va. Dep't of Transp.*, 291 F.3d 276, 280 (4th Cir. 2002)).  "[A] suit by an individual against an unconsenting State is the very evil at which the Eleventh Amendment is directed and it exists whether or not the State is acting for profit, in a traditionally private enterprise, and as a market participant."  *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 685 (1999).

PHEAA is an agency of the Commonwealth of Pennsylvania.  24 P.S. §§ 5101-5199; *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, No. 1:07-CV-00960, 2015 WL 236630, (E.D. Va. Jan. 16, 2015), *appeal argued*, No. 15-1093 (4th Cir. May 12, 2015); *Pele v. Pa. Higher Educ. Assistance Agency*, 53 F. Supp. 3d 857 (E.D. Va. 2014), *appeal argued*, No. 14-2202 (4th Cir. May 12, 2015).  It "operates in the public interest by making education possible for those who would not otherwise have the financial capacity to obtain an education. . . .  [B]y looking at the entire statutory scheme which created PHEAA and at the sole reason for its existence, the conclusion is inescapable that PHEAA is an agency of the

Commonwealth." *PHEAA v. Reid*, 15 Pa. D. & C. 3d 661, 665-66 (Ct. Comm. Pleas 1980). As a State agency, PHEAA enjoys the same Eleventh Amendment rights as the Commonwealth itself. Therefore, the Court must dismiss Robinson's claims against PHEAA. If, however, the Court declines to dismiss PHEAA at this time, it should stay all proceedings against PHEAA until the appeals have been resolved in *Oberg* and *Pele*.

In any event, the Court must dismiss Robinson's defamation count, because FCRA preempts such claims. 15 U.S.C. § 1681h(e).

## II.
## FACTS ALLEGED IN COMPLAINT

On December 2, 2014, Robinson filed a complaint in the Circuit Court for Prince George's County Maryland against PHEAA; the United States Department of Education ("DOE"); and three credit reporting agencies ("CRAs") — Equifax Information Services, LLC, Experian Information Solutions, Inc. and Trans Union, LLC. (Doc. 2.) Robinson did not serve PHEAA at that time. On January 9, 2015, Trans Union removed the case to this Court based on Federal question jurisdiction. (Doc. 1.) On April 23, 2015, PHEAA received the Complaint and a summons issued by this Court.

In his Complaint, Robinson claims that DOE student loans were being reported on his Equifax, Experian and Trans Union credit reports. (Compl. ¶ 8.) He implies that PHEAA services these DOE loans and furnishes information to the CRAs about them. (*Id*. ¶¶ 3, 13.) Robinson denies ever authorizing a student loan in his name. (*Id*. ¶ 9.) Specifically, he contends that his signature on the DOE loan application was forged. (*Id*. ¶¶ 11, 13.) According to Robinson, he has been disputing the DOE loans since November 2011. (*Id*. ¶¶ 10, 11.) He asserts that PHEAA failed to determine that the loan application was forged "and instructed the CRAs to continue reporting [Robinson] as responsible for the student loan accounts." (*Id*. ¶ 13.)

Based on these allegations, Robinson argues that PHEAA violated FCRA by supposedly failing to fully and properly investigate his disputes (Count Two), and that it defamed him by making purportedly false public statements about his credit history (Count Three).

## III.
## ARGUMENT
## ROBINSON'S CLAIMS ARE BARRED BY THE ELEVENTH AMENDMENT

**A.    States and state agencies are immune from suits in federal court.**

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.  The Eleventh Amendment has been interpreted to protect a state from suit brought by one of its own citizens, as well as suits brought by citizens of other states. *Bd. of Trs. of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001).  State agencies share in the state's Eleventh Amendment immunity. *E.g.*, *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (noting that Eleventh Amendment proscribes suits against States and State agencies "regardless of the nature of the relief sought"); *N. Ins. Co. of New York v. Chatham Cnty., Ga.*, 547 U.S. 189, 193 (2006) ("States and arms of the State possess immunity from suits authorized by federal law.").

PHEAA is a state agency and an arm of the Commonwealth of Pennsylvania.  As such, it is not subject to suit in Federal Court.

**B.    PHEAA's formation and purpose.**

In 1963, Pennsylvania amended its State Constitution to authorize grants and loans to Pennsylvania residents for higher education purposes.  Pa. Const. art. III, § 29.  Upon this amendment, PHEAA's enabling act became effective.  24 P.S. § 5112.  The General Assembly of the Commonwealth of Pennsylvania created PHEAA "for the benefit of the people of the

3

Commonwealth, for the improvement of their health and welfare, and for the promotion of the economy" – all of which are declared public purposes.  24 P.S. § 5105.6.

Specifically, the Commonwealth formed PHEAA to perform the essential government function of improving the higher educational opportunities of the residents of the Commonwealth, by assisting them in meeting the expenses of higher education and by enabling lenders and post-secondary institutions to do the same.  24 P.S. §§ 5102, 5105.6.  Thus, when the legislature created PHEAA, it also established a scholarship program and tasked PHEAA with its administration.  24 P.S. §§ 5151 & 5152.  It has also directed PHEAA to administer numerous other State higher education financial aid programs.  *E.g.*, 24 P.S. §§ 5197, 5198.6, 25-2599.4, 7103 & 7203; 62 P.S. § 1303; 72 P.S. §§ 1738-E, 1738-J & 1714-E.1; 73 P.S. § 400.3102.

## C.     Application of the Fourth Circuit's arm-of-the-state test.

The Fourth Circuit applies a four-part "arm-of-the-state" test to determine whether an entity is a State agency.  *U.S. ex rel. Oberg v. Kentucky Higher Educ. Student Loan Corp.*, 681 F.3d 575, 580 (4th Cir. 2012) ("*Oberg I*").  The first factor is "whether any judgment against the entity as defendant will be paid by the State or whether any recovery by the entity as plaintiff will inure to the benefit of the State."  *Id.*  The second factor is the degree of autonomy that the entity exercises.  *Id.*  The third factor asks "whether the entity is involved with state concerns as distinct from non-state concerns, including local concerns."  *Id.*  The last factor examines "how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State."  *Id.*  If on balance, the totality of the factors favors PHEAA's status as an arm-of-the-state, then PHEAA shares in Pennsylvania's Eleventh Amendment immunity.

PHEAA satisfies each prong of the test and is, therefore, an arm-of-the-state of Pennsylvania.  The Court should accordingly dismiss this lawsuit.

**1.**     **The first factor weighs in PHEAA's favor because Pennsylvania would be at least functionally liable for a judgment against PHEAA.**

"An entity may . . . constitute an arm of the state 'where the state is functionally liable, even if not legally liable'" for a judgment against the entity. *U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency*, 745 F.3d 131, 137 (4th Cir. 2014) ("*Oberg II*") (citation omitted).  So where an entity's funds are "either held in the Treasury or restricted as to use," an "award from those funds would directly interfere with the state's fiscal autonomy." *Md. Stadium Auth. v. Ellerbe Becket, Inc.*, 407 F.3d 255, 263-64 (4th Cir. 2005) (citation omitted).  Pennsylvania would be at least functionally liable, if not legally liable, for a judgment against PHEAA, because "a judgment against PHEAA would be paid with the Commonwealth's money from the Pennsylvania Treasury Department." *Pele*, 53 F. Supp. 3d at 863.[1]

PHEAA generates revenues under the authority of Pennsylvania law, and its revenues are held in the Pennsylvania Treasury.  24 P.S. § 5104(1); 24 P.S. § 5104(1.1)(iii); 24 P.S. § 5104(1.2);[2] 24 P.S. § 5104(3).  PHEAA's funds are also restricted in their use: PHEAA must use them to carry out the "purposes of the agency."  24 P.S. § 5104(3).  Before PHEAA can spend any money, it must receive approval from the Treasurer.  *E.g.*, 72 P.S. §§ 306-307 & 1501-1502.  Specifically, Pennsylvania law prohibits any money from being paid "from any of

---

[1]  While PHEAA's enabling statute disclaims Pennsylvania's liability for PHEAA's "debts," the statute does not disclaim liability for judgments entered against PHEAA.  *See* 24 P.S. § 5104(3), 24 P.S. § 5104(8), and 24 P.S. § 5105.1.  As the entirety of those sections make clear, the statute disclaims liability for debt issuances, not money judgments.

[2]  PHEAA may "make, guarantee, undertake commitments to make or acquire and participate with lending or postsecondary institutions in the making of loans, [to] service or otherwise provide loans . . . to lenders, postsecondary institutions and to persons who are residents of this state . . . ."  24 P.S. § 5104(1).  PHEAA is authorized to service and guarantee "loans funded, guaranteed or reinsured under Federal laws."  *Id.*  PHEAA also may enter into contracts with "schools, lenders, individuals, corporations . . . other states and the Federal government to make, service, invest in, purchase, make commitments to purchase, take assignments of or administer loans . . . ."  24 P.S. § 5104(1.1)(iii).  And it may guarantee loans under the federal Higher Education Act ("HEA").  24 P.S. § 5104(1.2).

the funds of the State Treasury, except upon warrant of the State Treasurer, issued upon requisition pursuant to law . . ." 72 P.S. § 307.  PHEAA is also subject to state audit.  24 P.S. §§ 5104(1.1) & 5108.  And its funds and property revert to the Commonwealth in the event of its dissolution.  24 P.S. § 5109.  Since all of PHEAA's funds are deposited into the State Treasury, any judgment against PHEAA would actually have to be paid out of the State Treasury.

While it is true that PHEAA's funds are held in what is known as the Educational Loan Assistance Fund ("ELAF") within the Commonwealth Treasury, 24 P.S. § 5105.10, that is irrelevant.  "The broader inquiry does not focus on whether funds are retained in a particular account of the State or in the general fund of the State treasury . . . ." *S.C. Dep't of Disabilities & Special Needs v. Hoover Universal, Inc.*, 535 F.3d 300, 305 (4th Cir. 2008).  "The key is not the ability to identify segregated funds, but the larger concept of jurisdiction over state sovereignty which the eleventh amendment proscribes." *U.S. ex rel. King v. Univ. of Texas*, 544 F. App'x 490, 497 (5th Cir. 2013), *cert. denied*, 134 S. Ct. 1767 (Mar. 31, 2014).  Addressing a similar situation of segregated, earmarked funds, the Sixth Circuit stated:

> It is likewise immaterial that the funds of the education trust, like the funds of many public corporations, authorities, and similar establishments, come primarily from persons to whom the entity provides a service – and it is immaterial that such funds are earmarked for the benefit of those who receive the service. . . . Neither is the governmental character of these agencies compromised in any way by the fact that the agencies' funds are earmarked – like highway trust funds and countless other restricted accounts of governmental bodies – for use in performing the functions that the agencies were created by law to perform.

*Michigan v. United States*, 40 F.3d 817, 829 (6th Cir. 1994).

Any judgment that PHEAA might have to pay would negatively impact its ability to fulfill its statutory mission, because the cost would be borne by either (a) Pennsylvania students in the form of less grant money, or (b) the taxpayers as a whole, to the extent that the legislature

increases its appropriations to PHEAA so that PHEAA can continue to ensure access to higher

education.  In this regard, the Eleventh Circuit's recent observations are on point:

> Appellant joins a long line of litigants who have sought to detach the importance of a State's legal liability for judgments against a state agency from its moorings as an indicator of the relationship between the State and its creation and to convert the inquiry into a formalistic question of ultimate financial liability. . . . [T]his argument digresses from the real funding issue: Should judgment creditors deplete the District's funds to the point that it can no longer effectively function, the State would ultimately have to choose between increasing its appropriation to make up the shortfall or shirking its constitutionally mandated duty to conserve and protect [the State's] natural resources and scenic beauty. Ultimately then, while a judgment is legally enforceable against the district . . . [t]he state's treasury is directly implicated.

*U.S. ex rel. Lesinski v. S. Fla. Water Mgmt. Dist.*, 739 F.3d 598, 605 (11th Cir. 2014), *cert.*

*denied*, 134 S. Ct. 2312 (May 19, 2014).  Similar to *Lesinski*, a judgment against PHEAA would

directly interfere with Pennsylvania's fiscal autonomy.  *Pele*, 53 F. Supp. 3d at 865-66.  In short,

"as a practical matter," if PHEAA is to survive to achieve its statutory purpose, a judgment

would "expend itself against state treasuries."  *See Oberg II*, 745 F.3d at 137 (quoting *Hess v.*

*Port Auth. Trans-Hudson Corp.*, 413 U.S. 30, 50 (1994)).

In sum, the first factor thus weighs heavily in favor of PHEAA's status as an arm-of-the-

state.  *Oberg*, 2015 WL 236630 at *2; *Pele*, 53 F. Supp. 3d at 866.

**2.      Pennsylvania exercises pervasive control over PHEAA, and PHEAA has minimal, if any, autonomy from Pennsylvania.**

The second factor examines "the degree of autonomy exercised by the entity, including

such circumstances as who appoints the entity's directors or officers, who funds the entity, and

whether the State retains a veto over the entity's actions."  *Oberg I*, 681 F.3d at 580.  PHEAA is

far from autonomous from the Commonwealth of Pennsylvania.

a.      **Pennsylvania controls PHEAA through PHEAA's Board of Directors.**

Pennsylvania controls the policy and direction of PHEAA through its Board, every

member of which is either an elected Commonwealth legislator or an appointee of the Governor

of Pennsylvania.  Sixteen of PHEAA's 20 directors are members of the sitting Pennsylvania

legislature (appointed by the leadership of their respective chamber), and one is the Secretary of

Education (a gubernatorial appointee).  *See* 24 P.S. §5103 (repealed).[3]  The Governor appoints

the remaining three directors, subject to Senate confirmation.  *Id*.  All twenty Board members

serve at the pleasure of their appointing officers and can be removed by those officers without

cause.  *See* Pa. Const. art. VI, §7.

"This arrangement gives the Commonwealth significant control over the direction of

PHEAA."  *Oberg*, 2015 WL 236630 at *3.  Indeed, "state authority to appoint all of an entity's

decisionmakers remains powerful evidence of state control."  *Oberg II*, 745 F.3d at 144 (finding

that the Arkansas Student Loan Authority satisfied the autonomy factor, and explaining:

"Critically, the Governor of Arkansas also appoints every member of ASLA's board.").  As a

matter of law, when an entity's board is made up of State officials or appointees of State

officials, "the State, through its top officials, retains **ultimate veto power over the actions of**"

the entity.  *Hoover*, 535 F.3d at 307 (emphasis added); *see also Md. Stadium*, 407 F.3d at 264

("The fact that all of the university's decisionmakers are appointed by the Governor is a key

---

[3] In 2010, the Commonwealth enacted legislation to change the Board membership so
that there eventually will be twelve, instead of sixteen, legislative Board members and four
private citizens appointed by the legislature.  71 P.S. §111.2(b)(1).  The private citizens will only
be appointed once a legislator's term on the Board ends and that legislator does not wish to be
reappointed.  *Id*.  To date, no legislative Board member has declined to seek reappointment at the
end of his or her term; therefore, PHEAA's Board still has sixteen legislators.  Even when the
new statute is applied, PHEAA's Board will still be made up of state officials and *state-
appointed officials*.  *See* 71 P.S. §111.2(b)(1).  The appointees must take an oath of office and,
thereby, become a state official subject to the Public Official and Employee Ethics Act.  65 Pa.
C.S.A. §§ 1101 *et seq*.  In short, both before and after the 2010 law, all PHEAA Board members
are appointed, confirmed, and removable by the Commonwealth's legislature or Governor.

indicator of state control").  By controlling PHEAA's Board, the Commonwealth, through its

General Assembly and Governor, controls PHEAA itself, because PHEAA's Board of Directors

governs PHEAA and exercises all its statutory powers.  71 P.S. § 111.2(a)(1).

### b.    Pennsylvania controls PHEAA financially.

PHEAA must obtain the Commonwealth Treasurer's approval for all expenditures.  72

P.S. § 307.  This is an important indicator of State control.  *See Hoover*, 535 F.3d at 306 (holding

control was clear from the State's "exercise of direct control and dominion" over funds); *Md.*

*Stadium*, 407 F.3d at 263.  And PHEAA can spend its funds only to carry out the statutory

"purposes of the agency."  24 P.S. § 5104(3).

The Board must obtain the Governor's approval to borrow money or issue bonds, 24 P.S.

§§ 5105.1(a), 5104(3), and the General Assembly has set a statutory limit on the amount of the

debt that PHEAA can incur, 24 P.S. § 5105.1(a.1).  Requiring a state official to approve an

entity's debt is a telltale sign of State control, making it more likely that the entity is a State

agency.  *Oberg II*, 745 F.3d at 141, 144; *Md. Stadium*, 407 F.3d at 264.

PHEAA is also subject to audit by the Department of Auditor General.  24 P.S. § 5108.

This supports a finding that PHEAA is an arm-of-the-state.  *Md. Stadium* at 264 ("[T]he

University is subject to an annual audit by the Legislative Auditor."); *Skehan v. State System of*

*Higher Educ.*, 815 F.2d 244, 248 (3d Cir. 1987) ("[The State System of Higher Education's]

activities are subject to an annual audit by the Department of the Auditor General.").  PHEAA

also must make an annual report to the Governor and Legislature.  24 P.S. § 5108.  This too

reveals State control.  *Rutledge v. Ariz. Bd. of Regents*, 660 F.2d 1345, 1349-50 (9th Cir. 1981);

*Skehan*, 815 F.2d at 248.

### c.     Pennsylvania controls PHEAA through the Attorney General.

The General Assembly has triggered several material State controls over PHEAA by defining it as a Commonwealth agency.  71 P.S. § 732-102.  These controls give Pennsylvania's Attorney General (the "AG") significant power over PHEAA's contracts and litigation decisions.

Because PHEAA is a "Commonwealth agency," the AG must approve all of PHEAA's deeds, leases and contracts for "form and legality."  71 P.S. §§ 732-102, 732-204(f).  No contract that PHEAA intends to enter is binding or of any legal effect until it has the AG's approval.  *Id.* PHEAA must either modify the contract to satisfy the AG's objections or appeal his decision to the Commonwealth Court, which has original jurisdiction over all disputes relating to the Commonwealth and its agencies.  *Id.*  By controlling its contracting authority, Pennsylvania "retains a veto over most of" PHEAA's actions.  *Md. Stadium*, 407 F.3d at 264 ("The University can purchase and sell real property and enter into contracts over $500,000 only with prior approval . . . ."); *see also King*, 544 F. App'x at 497 (finding control where the Center's contracts must be in accord with the Board of Regents' rules or approved by the Board).

In addition, nothing in PHEAA's enabling act grants it the general power to "sue and be sued."  *See* 24 P.S. § 5101 *et seq*.  The General Assembly has only authorized PHEAA to initiate loan collection actions, and has prescribed detailed requirements for doing so.  24 P.S. § 5104.3. In all other instances, PHEAA must be represented by the AG, unless the AG delegates to PHEAA the authority to represent itself.  71 P.A. § 732-204(c).[4]

---

[4] Although the AG has delegated to PHEAA the authority to represent itself in this matter, the AG is representing PHEAA in another matter pending in the United States District Court for the Middle District of Pennsylvania.  (*See* Civil Docket, *Chambers v. Pennsylvania Higher Education Assistance Agency*, Case No. 1:15-cv-0073-YK (M.D. Pa.), publicly available at https://ecf.pamd.uscourts.gov/cgi-bin/DktRpt.pl?121651840917942-L_1_0-1; copy attached as Exhibit A.)

Finally, PHEAA may seek legal advice from the AG regarding matters related to its official powers and duties.  71 P.A. § 732-204(a).  PHEAA must then follow this advice, unless it is overruled by the Pennsylvania Commonwealth Court.  *Id.*  This is another indication of State control.  *Hall v. Med. College of Ohio at Toledo*, 742 F.2d 299, 306 (6th Cir. 1984).

        **d.**        **Pennsylvania controls PHEAA through the General Assembly.**

Pennsylvania's General Assembly, and its Constitution, provide PHEAA with all of its powers and impose all of its duties.  *See* 24 P.S. § 5101 *et seq*.; Pa. Const. art. III, § 29.  Thus, it has only "such autonomy as the Legislature has seen fit to bestow."  *Jackson v. Hayakawa*, 682 F.2d 1344, 1350 (9th Cir. 1982) (internal quotation marks, citation omitted).  In this respect, PHEAA is no different from the entity held to be a State agency in *College Savings Bank v. Florida Prepaid Postsecondary Education Expense Board*, where the district court noted that "all of Florida Prepaid's powers are derived from specific legislative grants," and that it "has only the powers and degree of independence necessary for it to carry out the tasks assigned to it by the State of Florida."  948 F. Supp. 400, 412-13 (D.N.J. 1996), *aff'd*, 131 F.3d 353 (3d Cir. 1997), *aff'd*, 527 U.S. 666 (1999).

The fact that the Commonwealth's legislature has instructed that PHEAA carry out its "essential government function" for "the benefit of the people of the Commonwealth, for the improvement of their health and welfare, and for the promotion of the economy" 24 P.S. § 5105.6, demonstrates that the legislature has set the course for, and steers, PHEAA's direction and policy.  *See Tradigrain, Inc. v. Miss. State Port Auth.*, 701 F.2d 1131, 1133 (5th Cir. 1983) ("The Authority, in the course of performing its 'essential government function,' is instructed to carry out its purposes 'for the benefit of the people of the State of Mississippi.'").  The Legislature further oversees PHEAA's operations through its 16 members on PHEAA's board.

In addition, PHEAA must report its fiscal condition annually to the Legislature.  24 P.S.

§ 5108.  Courts have found this indicates State control.  *Md. Stadium*, 407 F.3d at 264-65;

*Skehan* at 248; *Harden v. Adams*, 760 F.2d 1158, 1163 (11th Cir. 1985); *Tradigrain.*, 701 F.2d at

1133.  Finally, the Commonwealth's legislature has put a ceiling on the amount of debt that

PHEAA may incur.  24 P.S. § 5105.1(a.1).  In short, PHEAA was created by statute and by

statute is subject to Pennsylvania's extensive control.  *See Rutledge*, 660 F.2d at 1349-50

(finding it significant that state statutes authorized the operation of the university and provided

for its governance).

PHEAA is plainly not autonomous from the Commonwealth.  *Oberg*, 2015 WL 236630

at *3 ("[M]ost of the evidence shows substantial Commonwealth control and supports finding

PHEAA to be an arm of Pennsylvania.").  The Court should reach the same conclusion here.

### 3. PHEAA is focused on the quintessential state concern of improving higher education opportunities for Pennsylvanians.

PHEAA's concern is exclusively the Commonwealth of Pennsylvania.  PHEAA acts "in

all respects for the benefit of the people of the Commonwealth, for the improvement of their

health and welfare, and for the promotion of the economy."  24 P.S. § 5105.6.  The Pennsylvania

legislature has directed PHEAA to administer numerous State higher education financial aid

programs.  *E.g.*, 24 P.S. §§ 5151, 5152, 5197, 5198.6, 25-2599.4, 7103 & 7203; 62 P.S. § 1303;

72 P.S. §§ 1738-E, 1738-J & 1714-E.1; 73 P.S. § 400.3102.  Benefiting higher education in

Pennsylvania is PHEAA's one and only statutory purpose.  24 P.S. §§ 5102.  "Higher education

is an area of quintessential state concern and a traditional state governmental function."  *Md.*

*Stadium*, 407 F.3d at 265.  Thus, the Fourth Circuit has concluded that PHEAA's "work is

clearly of legitimate state concern."  *Oberg II*, 745 F.3d at 140; *see also Oberg*, 2015 WL

236630, at *4 ("PHEAA's activities center around making higher education affordable for

Pennsylvanians and Pennsylvania students, which is clearly a legitimate state concern.") (internal quotation marks omitted).

Consistent with its statutory authority, PHEAA purchases, services and guarantees loans made to borrowers throughout the country.  This does not alter its core concern.  "The Fourth Circuit made clear in *Oberg II* that even if PHEAA's reach is nationwide, the 'operative question' under the third factor is whether PHEAA is primarily involved with state concerns." *Pele*, 53 F. Supp. 3d at 869 (quoting *Oberg II*, 745 F.3d at 140).  That PHEAA services and guarantees loans for borrowers outside of Pennsylvania does not somehow convert PHEAA's concern into a non-state concern.  "Stated differently, PHEAA's expansive out-of-state business ultimately benefits Pennsylvania and its citizens."  *Pele*, 53 F. Supp. 3d at 870.

In *Maryland Stadium Authority*, the Fourth Circuit never examined how much revenue the University garnered from out-of-state individuals, entities and activities.  *See generally* 407 F.3d 255.  In finding this factor satisfied, the court focused instead on the University's purpose – higher education.  *Id*. at 265.  And the district court in *College Savings Bank* rejected the idea that an entity with competitive interstate operations cannot be a state agency.  948 F. Supp. at 416-17.  When *College Savings Bank* reached the Supreme Court, that Court made it clear that an entity can be a State agency even if it engages in interstate commercial activity.  527 U.S. 666, 684-85 (1999).

In fact, PHEAA's loan guarantee activities provide further evidence that it is a state agency.  PHEAA is authorized to guarantee student loans only if it is a State or a private non-profit organization.  20 U.S.C. § 1085(j).  PHEAA is *not* a private organization: it is a public corporation and government instrumentality.  24 P.S. § 5101.  In authorizing PHEAA to act as a

13

guarantee agency, the federal government recognized PHEAA as a state agency.  20 U.S.C. § 1085(j).

PHEAA's entire statutory focus is on higher education in the Commonwealth of Pennsylvania.  The third factor thus weighs in favor of PHEAA's status as an arm-of-the-state. *Oberg*, 2015 WL 236630 at *4; *Pele*, 53 F. Supp. 3d at 870.

### 4.      Pennsylvania treats PHEAA as an agency of the Commonwealth.

The fourth factor is "how the entity is treated under state law, such as whether the entity's relationship with the State is sufficiently close to make the entity an arm of the State." *Oberg I*, 681 F.3d at 580.  "Although the question of whether an entity is an alter ego of the state is a question of federal, not state, law, the manner in which state law addresses the entity remains important, and **potentially controlling**." *Md. Stadium*, 407 F.3d at 265 (emphasis added).  "In addressing this factor, a court may consider both the relevant state statutes, regulations, and constitutional provisions which characterize the entity, and the holdings of state courts on the question." *Id.*

This factor weighs in favor of PHEAA's status as a State agency.  *Oberg II*, 745 F.3d at 140.  Myriad undisputed facts establish that PHEAA is an agency of the Commonwealth:

- PHEAA's enabling legislation was effective, and PHEAA was created, contingent upon the adoption of an amendment to Pennsylvania's Constitution.  24 P.S. § 5112; Pa. Const. art. III, § 29.

- PHEAA is declared by Pennsylvania law to be a "government instrumentality," and PHEAA's enabling statue declares that PHEAA performs "an essential governmental function."  24 P.S. §§ 5101, 5105.6.

- PHEAA's property, income, and activities are exempt from taxation, as is the income from the bonds and notes that PHEAA issues.  24 P.S. §§ 5105.6 & 5107.

- PHEAA may investigate potential fraud against it and, where there is evidence of criminal activity, PHEAA's Board may issue subpoenas.  24 P.S. § 5104(10)(ii)-(iii).

- A committee of PHEAA's Board sits as a quasi-judicial tribunal that hears borrowers' appeals.  24 P.S. § 5104.3; 22 PA. CODE § 121.9(b).

- The state statutes of limitations do not apply to PHEAA.  24 P.S. § 5104.3(j); *Reid*, 15 Pa. D. & C.3d at 665-66.

- PHEAA must comply with Pennsylvania's Open Meetings and Right to Know laws, and its Adverse Interest Act.  65 P.S. § 67.102; 65 Pa. C.S.A. § 703; 71 P.S. § 776.2.

- PHEAA's officers, management and Board members are "public officials" subject to the Pennsylvania Public Official and Employee Ethics Act.  65 Pa. C.S.A. § 1102.

- PHEAA's employees must participate in the State Employee Retirement System, and are required to be covered by the Pennsylvania Employee Benefit Trust Fund for their healthcare.  71 Pa. C.S.A. §§ 5102 & 5301.

- PHEAA may enact regulations necessary to carry out its purposes, but those regulations must be approved by Pennsylvania's Independent Regulatory Review Commission.  24 P.S. §§ 5104(6), 5104.3(k), 5197, 5198.6 & 5199.8(g).

- PHEAA's assets revert to Pennsylvania upon PHEAA's dissolution.  24 P.S. § 5109.

- Pennsylvania's Commonwealth Court, which has original jurisdiction over cases to which Pennsylvania or its officers are a party, 42 Pa. C.S.A. § 761 and PA. R.A.P. 106, has held that PHEAA is an agency of the Commonwealth.  *Richmond v. PHEAA*, 297 A.2d 544, 546 (Pa. Commw. Ct. 1972).  Other Pennsylvania courts have held that PHEAA is a Commonwealth agency.  *Pa. Dep't of Revenue v. Bookser*, 3 Pa. D. & C.4th 566, 568-69 (Pa. C.P. Allegheny Cty. 1989); *PHEAA v. Xed*, 456 A.2d 725, 726 (Pa. Cmwlth. 1983); *PHEAA v. Barksdale*, 449 A.2d 688, 689 (Pa . Super. 1982); *PHEAA v. Reid*, 15 Pa. D. & C.3d 661, 665-666 (Pa.Com.Pl. 1980).

Pennsylvania's statutory and case law clearly treat PHEAA as part of the Commonwealth of Pennsylvania.  Based on the above, the Fourth Circuit held that "[t]he final factor . . . also supports PHEAA's contention that it is an arm of Pennsylvania."  *Oberg II*, 745 F.3d at 140.

In summary, each of the four factors of the Fourth Circuit's arm-of-the-state test weighs in PHEAA's favor.  PHEAA is, therefore, a Pennsylvania agency and is entitled to Eleventh Amendment immunity.

15

**D.**     **If the Court declines to hold, on a 12(b)(6) motion, that PHEAA is a State agency, then it should stay all proceedings against PHEAA until the *Pele* and *Oberg* appeals have been resolved.**

In two cases, the United States District Court for the Eastern District of Virginia has held that PHEAA is a Pennsylvania agency.  *Oberg*, 2015 WL 236630; *Pele*, 53 F. Supp. 3d 857.  In *Oberg*, the court twice ruled — at the motion to dismiss stage — that PHEAA is an arm of the Commonwealth of Pennsylvania.  Then, on remand from the Fourth Circuit for discovery on the issue, it granted PHEAA's motion for summary judgment, again finding that PHEAA is a Pennsylvania agency.  PHEAA prevailed on its Eleventh Amendment defense in *Pele* on summary judgment as well.  *Oberg* and *Pele* are currently under review by the Fourth Circuit.

PHEAA's status as a state agency has been the subject of discovery in two Federal cases, both of which ruled in favor of PHEAA.  Accordingly, PHEAA submits that, in this case, dismissal at the motion to dismiss stage is appropriate based upon the provisions of PHEAA's enabling act and those prior rulings.  Robinson has not pleaded anything that suggests that PHEAA is not a State agency.  And the Fourth Circuit has "often affirmed Rule 12(b)(6) motions to dismiss on the basis of Eleventh Amendment immunity." *Hutto v. South Carolina Retirement System*, 773 F.3d 536, 545 (4th Cir. 2014).  If, however, the Court does not feel that it can rule on PHEAA's status as an agency of the Commonwealth of Pennsylvania at this stage, then PHEAA respectfully requests that it stay the proceedings against PHEAA until all appeals in *Oberg* and *Pele* are resolved.

**IV.**
**FCRA PREEMPTS ROBINSON'S DEFAMATION CLAIM**

The Court should dismiss Robinson's defamation claim against PHEAA in any event.

FCRA preempts consumer common-law claims for defamation "except as to false information furnished with malice or willful intent to injure such consumer."  15 U.S.C.

§ 1681h(e).  Robinson makes a single, conclusory allegation that PHEAA "intentionally and maliciously made false statements publically about Plaintiff's credit history."  (Compl. ¶ 33.) This is not sufficient to plead malice or willful intent to harm.

To plead malice, Robinson must allege facts showing that PHEAA acted with "reckless disregard for the truth or falsity of the information it was reporting, which requires a showing that [PHEAA] acted with a high degree of awareness of probable falsity or had serious doubts as to its veracity." *Alston v. United Collections Bureau, Inc.*, No. DKC 13-0913, 2014 WL 859013, at *11 (D. Md. Mar. 4, 2014).  "'Willful intent to injure' requires a showing that [PHEAA] knowingly and intentionally committed an act in conscious disregard for [Robinson's] rights. *Beachley v. PNC Bank, N.A.*, No. JKB-10-1774, 2011 WL 3705239, at *5 (D. Md. Aug. 22, 2011).

Robinson has not come close to meeting these pleading standards through his self-serving and threadbare allegation in Paragraph 33.  And nothing else in the Complaint supports that allegation.  Indeed, the most that Robinson alleges is that PHEAA failed to reasonably or properly investigate his dispute.  (*E.g.* Compl. ¶¶ 13, 27.)  That is not sufficient.  *See, e.g.*, *Beachley*, 2011 WL 3705239, at **5-7 (rejecting that notification of the purported inaccuracies was sufficient to plead malice or willful intent to injure).  Indeed, if such allegations were sufficient, then virtually every FCRA claim would support a claim for defamation.  That result would nullify Section 1681h(e).

## V.
## <u>CONCLUSION</u>

For the foregoing reasons, the Court should dismiss the Plaintiff's lawsuit against PHEAA with prejudice, based upon the Eleventh Amendment of the United States Constitution.

Moreover, the Court should dismiss the Plaintiff's defamation claim against PHEAA, because it is preempted by the Fair Credit Reporting Act.

Respectfully submitted,

PENNSYLVANIA HIGHER EDUCATION
ASSISTANCE AGENCY

Dated:  May 14, 2015                    By:  _____/s/_____
                                        Joseph P. Esposito (Md. Fed. Bar No. 05927)
                                        HUNTON & WILLIAMS LLP
                                        2200 Pennsylvania Ave N.W.
                                        Washington, D.C. 20037-1701
                                        Telephone: (202) 955-1500
                                        Facsimile: (202) 778-2201
                                        jesposito@hunton.com

                                        Jill Marie deGraffenreid (Md. Fed. Bar No. 13536)
                                        HUNTON & WILLIAMS LLP
                                        1751 Pinnacle Drive, Suite 1700
                                        McLean, Virginia 22102
                                        Telephone:  (703) 714-7400
                                        Facsimile:  (703) 714-7410
                                        jdegraffenreid@hunton.com

                                        *Counsel for Defendant Pennsylvania Higher
                                        Education Assistance Agency*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on May 14, 2015, I caused a copy of this document to be served on all

parties by filing the document with the Clerk of Court using the Court's CM/EMF system, which

electronically transmits a copy and a notification of electronic filing (NEF) to all counsel of

record who are registered CM/EMF users.

_____/s/_____
Jill Marie deGraffenreid (Md. Fed. Bar No. 13536)
HUNTON & WILLIAMS LLP
1751 Pinnacle Drive, Suite 1700
McLean, Virginia  22102
Telephone:  (703) 714-7400
Facsimile:  (703) 714-7410
jdegraffenreid@hunton.com
