**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| ANTHONY ROBINSON | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil No. 15 CV 0079 (GJH) |
| | * | |
| PENNSYLVANIA HIGHER EDUCATION | * | |
| ASSISTANT AGENCY d/b/a FEDLOAN | * | |
| SERVICING, et al | * | |
| | * | |
| Defendant. | * | |

**********

**MEMORANDUM OF LAW IN SUPPORT OF**
**UNITED STATES DEPARTMENT OF EDUCATION'S MOTION TO DISMISS THE**
<u>**AMENDED COMPLAINT FOR LACK OF JURISDICTION**</u>

**INTRODUCTION**

Defendant, the United States Department of Education ("ED"), an agency of the United States, by and through its counsel, Rod J. Rosenstein, United States Attorney for the District of Maryland, and Jane E. Andersen, Assistant United States Attorney for said district, hereby moves to dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1).

This case arises under the Fair Credit Reporting Act concerning federal loans provided to plaintiff for use of his dependent daughter to attend school. Plaintiff claims that he did not authorize the approval of these loans and that the signature on the application was forged, despite the fact that his daughter received the benefit of the loan. Plaintiff alleges that he informed the credit reporting agencies that he did not authorize the loans, and surmises that had a reasonable investigation been conducted, it would have demonstrated that he did not authorize the loans.

Plaintiff asserts a claim against the ED for an alleged violation of § 1681s-2(b) of the Fair Credit Reporting Act (count two)[1]. Plaintiff seeks economic, compensatory, and punitive damages.

However, federal sovereign immunity has not been waived under the Fair Credit Reporting Act. A waiver of sovereign immunity must be clear and unequivocal. Here, plaintiff would ask this Court to assume that Congress intended to waive sovereign immunity based solely upon the application of a 1970 statutory definition to a 1996 amendment to the Fair Credit Reporting Act ("FCRA"). However, a waiver of federal sovereign immunity must be clear and unequivocal. The sole reliance on a statutory definition enacted over twenty years earlier, coupled with a lack of any legislature history to support any suggestion that Congress even considered whether the United States should be subjected to damages, requires a finding that sovereign immunity has not been waived.

## STATEMENT OF FACTS[2]

Under the William D. Ford Federal Direct Loan (Direct Loan) Program, the ED makes loans to enable a student or parent to pay the costs of the student's attendance at a postsecondary school. 20 U.S.C. § 1087a; 34 CFR 685.102. The Federal Direct PLUS Program provides loans to parents of dependent students attending schools that participate in the Direct Loan program. *Id*. The parent borrows directly from the federal government, and a loan servicer acts as a single contact related to the repayment of the loan. *See* United States Department of Education Direct

---

[1] The original complaint asserted a claim of defamation against the ED. ED filed a motion to dismiss all claims and plaintiff did not oppose ED's motion with respect to the defamation claim. Once the motion was fully briefed, plaintiff filed an Amended Complaint. The Amended Complaint no longer asserts a claim of defamation as to ED.

[2] Except as otherwise noted, the facts alleged in the Amended Complaint are accepted as true for the purposes of this motion only.

Loan Program, http://www.direct.ed.gov/parent.html[3] (last visited on June 12, 2015). Co-defendant Pennsylvania Higher Education Assistance Agency (PHEAA) is a loan servicer of the ED, operating as FedLoan Servicing ("FLS"). *See* Docket No. 38, Complaint ("Am. Complaint") at ¶ 3.

Section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA") creates a duty upon those that furnish information to CRAs, to, upon notice of a dispute with regard to the completeness or accuracy of any such information, conduct an investigation with respect to the disputed information. Plaintiff, Anthony Robinson, claims that unauthorized student loan accounts for his daughter's use were being reported in his name to CRAs. *See Am. Compliant* at ¶¶ 8-9. Plaintiff asserts that PHEAA furnishes information to CRAs as contemplated by the FCRA, and that the ED "directly or indirectly causes credit information to be furnished" to CRAs as contemplated by the FCRA. *See* Am. Complaint at ¶¶ 3, 7. Since at least November 2011, plaintiff asserts that he sent letters to CRAs Experian, Equifax, and Trans Union, claiming that the loan accounts were fraudulently opened in his name. *Id.* at ¶ 10. Plaintiff states, upon information and belief, that the CRAs forwarded plaintiff's disputes to FLS.

Plaintiff alleges that "[w]hereas a reasonable investigation would have resulted in FLS determining the signature on the application was a forgery, FLS failed to determine the obvious and instructed the CRAs to continuing reporting Plaintiff as responsible for the student loan accounts." *See* Am. Complaint at ¶ 13. Plaintiff admits that he signed a KHE-342 form, which authorized the ED or selected lender to perform a check on his credit history as required under the loan program. *See* Am. Complaint at ¶ 11. A copy of the KHE-342 forms, dated March 12,

---

[3] The U.S. Department of Education (ED) developed this inventory of website content as required by Section 207(f)(2) of the E-Government Act of 2002. This inventory is intended to be comprehensive, and to represent website content from ED and all its offices. http://www2.ed.gov/notices/egovinventory.html

2010 and February 8, 2011, referred to in the Amended Complaint are annexed to ED's Motion as Exhibit "1." The KHE-342 form was signed by plaintiff, in connection with his daughter's education. *Id*. While plaintiff admits he signed the KHE-342 form, he claims that the signature on the KHE-309a loan application form was forged, and asserts that had the defendants compared the signatures, they would have concluded the application was forged. *See* Am. Complaint at ¶ 11. A copy of the KHE-309a form, dated February 15, 2010, referred to in the Complaint is annexed as Exhibit "2." The KHE-309a form purports to be signed by plaintiff and his daughter. *Id*.

Plaintiff alleges that in April 2014 he provided a police report, a copy of his driver's license and social security card, a copy of his credit report with the disputed accounts encircled and a copy of section 611 of the FCRA" and requested that Direct Loan accounts be removed, blocked or otherwise prevent[ed] from appearing on his credit report. *See* Am. Complaint at ¶ 14. Plaintiff alleges that the Direct Loans no longer appear on his credit reports issued by Trans Union or Experian, but are still being reported by Equifax. *See* Am. Complaint at ¶ 15.

## ARGUMENT

### I.   This Court Lacks Subject Matter Jurisdiction

#### A.  Standard of Review

A motion to dismiss based upon lack of subject matter jurisdiction pursuant to FRCP 12(b)(1) raises the question of whether the court has the authority to hear and decide the case, and as such, jurisdiction "must be resolved before the Court can turn to the sufficiency or merits of the claim." *See Davis v. Thompson*, 367 F. Supp. 2d 792, 799 (D. Md. 2005) (*citing Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94-95 (1998)). The plaintiff bears the burden of proving that subject matter jurisdiction exists. *See Evans v. B.F. Perkins Co.,* 166 F.3d 642,

647 (4th Cir. 1999); *Davis v. Pak*, 856 F.2d 648, 650 (4th Cir. 1988); *Pritchett v. Fed. Emergency Mgmt. Agency*, No. 14-CV-2996, 2014 U.S. Dist. LEXIS 157229 (D. Md. 2014).

A defendant may challenge subject-matter jurisdiction (1) facially, asserting that the allegations pleaded in the complaint, if true, are insufficient to establish subject-matter jurisdiction, or (2) the Court may look outside the four-corners of the complaint. *Gill v. PNC Bank, N.A.*, No. 14-CV-677, 2015 U.S. Dist. LEXIS 16779, 9-10 (D. Md. 2015) (citing *Kerns v. United States*, 585 F.3d 187, 192 (4th Cir. 2009)). Here, even accepting as true all of plaintiff's factual assertions, this Court lacks jurisdiction as a matter of law.

### B. Sovereign Immunity Must be Unequivocally and Expressly Waived

"Sovereign immunity shields the United States from suit absent a consent to be sued that is 'unequivocally expressed.'" *United States v. Bormes*, 133 S. Ct. 12, 16 (2012) (citing *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). A statute waiving the sovereign immunity of the United States must be construed strictly in favor of the retention of sovereign immunity. *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-686 (1983); *Pritchett v. Fed. Emergency Mgmt. Agency*, No. 14-CV-2996, 2014 U.S. Dist. LEXIS 157229 (D. Md. 2014). Indeed, such a waiver is to be read no more broadly than its terms require. *Ruckelshaus*, 463 U.S. at 685 (1983); *see also Middlebrooks v. Leavitt*, 525 F.3d 341, 347 (4th Cir. 2008) ("The rules of statutory construction dictate that waivers of sovereign immunity 'must be construed strictly in favor of the sovereign and not enlarged beyond what the language requires'"). In an analogous analysis, the Supreme Court explained that the "requirement of a clear statement…ensures that Congress has specifically considered state sovereign immunity and has intentionally legislated on the matter" rather than

5

"legislate on a sensitive topic inadvertently or without due deliberation." *Sossamon v. Texas*, 131 S. Ct. 1651, 1661 (2001) (internal quotation marks omitted).

### C. The Fair Credit Reporting Act Does Not Unequivocally Waive Jurisdiction

The FCRA imposes actual damages, statutory damages, punitive damages, and criminal liability on "person[s]," and allows both state governments and federal agencies to sue "person[s]" under FCRA. 15 U.S.C. §§ 1681n, 1681o, 1681q, 1681s(a), (b), (c). Section 1681s-2(b) of the Fair Credit Reporting Act ("FCRA") creates a duty upon those that furnish information to CRAs, to, upon notice of a dispute with regard to the completeness or accuracy of any such information, conduct an investigation with respect to the disputed information. This case presents the important question of whether Congress waived the immunity of the United States by making it among the "persons" subject to FCRA liability for private damages suits.

#### i. History of The Fair Credit Reporting Act

Congress enacted the FCRA in 1970 "to promote efficiency in the Nation's banking system and to protect consumer privacy" by "requiring credit reporting agencies to maintain 'reasonable procedures' designed 'to assure maximum possible accuracy of the information' contained in the credit reports." *TRW Inc. Andrews*, 534 U.S. 19, 23 (2001); *Saunders v. Branch Banking & Trust Co.*, 526 F.3d 142, 147 (4th Cir. 2008) (citing *Safeco Ins. Co. of Am. v. Burr*, 127 S. Ct. 2201, 2205-06, (2007)). As originally enacted in 1970, the FCRA principally regulated "consumer reporting agenc[ies,]" entities that aggregate and disseminate personal information about consumers used to determine eligibility for credit, insurance, and other purposes. 15 U.S.C. § 1681a(d), (f). The 1970 statue defined the term "person" to include "any individual, partnership, corporation, trust, estate, cooperative association, government or governmental subdivision or agency, or other entity." 15 U.S.C. § 1681a(b). Under 5 U.S.C. §§ 1681n and 1681o of the 1970 Act, monetary damages were only permissible against "Any consumer

reporting agency or user of information." Pub. L. No. 104-208 § 2412(a) (d). That definition had no bearing on the liability of the United States for private civil suits because the 1970 statute imposed no such liability on an entity by virtue of being a "person."

The Consumer Credit Reporting Reform Act of 1996 expanded FCRA's scope beyond its original focus on CRAs to regulate persons who furnish information to consumer-reporting agencies and persons who use credit reports. *See* Pub. L. No. 104-208, §§ 2403, 2411, 110 Stat. 3009, 3009-430-31, 3009-443-46. Congress amended 5 U.S.C. §§ 1681n and 1681o to permit damages against "Any person." 5 U.S.C. §§ 1681n, 1681o; Pub. L. No. 104-208 § 2412(a) (d). Those changes subjected "person[s]" who violate the statute to compensatory, statutory and punitive damages. *See* 15 U.S.C. § 1681n (statutory and punitive damages for willful noncompliance); *id*. § 1681o (actual damages for negligent noncompliance).

### ii. There is No Clear Congressional Expression or Intent to Waive Sovereign Immunity under the Fair Credit Reporting Act

While the definition of "person" remained unchanged after the 1996 Amendment, there is no indication that Congress intentionally sought to subject the United States to monetary damages. Neither the Fourth Circuit nor the Supreme Court has ruled on whether the FCRA waves sovereign immunity. However, the Supreme Court has made clear that Courts may only look to the FCRA "to determine whether Congress intended to subject the United States to damages liability." *United States v. Bormes*, 133 S. Ct. 12, 20 (2012) (rejecting claim that the Little Tucker Act authorized FCRA damages against the United States).

The Supreme Court has held that courts must "presume congressional familiarity" with the "common rule" that "any waiver of the Government's sovereign immunity must be unequivocal." *Department of Energy v. Ohio*, 503 U.S. 607, 615 (1992) (citations omitted). Thus, while statutory definitions typically control the meaning of statutory words, there are

7

exceptions, such as when doing so would "create obvious incongruities in the language" or create "constitutional concerns." *Lawson v .Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201 (1949) (holding that the term "disability" was not used as a term of art in the statute, despite the term being defined therein); *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 206-207 (2009) ("statutory definition…does not apply to every use of the term 'political subdivision' of the Act."). When determining whether Congress has acted sufficiently clearly and explicitly in defining a term, a court must consider the nature and consequences of the enactment, and not just the definition. *See Bond v. United States*, 134 S.Ct. 2077, 2091 (2014) ("correctly reading a statute demands awareness of certain presuppositions."). In *Bond*, the Supreme Court declined to give conclusive significance to the broad statutory definition of the term "chemical weapon" in a criminal statute based upon a "dissonance" between the term's "ordinary meaning and the reach of the definition." *Id*. The Supreme Court has warned that the "tendency to assume that a word which appears in two or more legal rules, and so in connection with more than one purpose, has and should have precisely the same scope in all of them…has all the tenacity of original sin and must constantly be guarded against." *Gen. Dnamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 595 n.8 (2004).

Courts should be reluctant to interpret amendments to an existing scheme as allowing new damages against the United States when neither the text nor history of the amendments themselves affirmatively demonstrates that Congress intended that result. *See e.g. Employees of the Department of Health & Welfare v. Department of Public Health & Welfare*, 411 U.S. 279 (1973) ("Congress, acting responsibly, would not be presumed to [abrogate state sovereign immunity] silently" noting that there was "not a word in the history of the 1966 amendments to indicate a purpose of Congress" to subject States to suit in federal court."); *see also Library of*

*Congress v. Shaw*, 478 U.S. 310 (1986) (effects of amendment expressly waiving federal immunity to private damages suites did not waive sovereign immunity with respect to prejudgment interest, despite the fact that legislative history demonstrates that Congress intended that federal employees would enjoy the same rights and remedies in the courts as private litigates). Express congressional intent is particularly important where subjecting the United States to damages would be broad and substantial, as would be the case here. *See Stellick v. United States Dep't of Educ.*, No. 11-CV-0730, 2013 U.S. Dist. LEXIS 25058, 2013 WL 673856, (D. Minn. 2013) (noting that "the United States government is one of the world's largest creditors," that the "consequences of holding that the federal government can be held liable for any violation of the FCRA would be immense," and that in "such circumstances, it is particularly important to insist that Congress waive sovereign immunity expressly and clearly.").

Numerous district courts have held that the FCRA does not waive the United States' sovereign immunity. *See e.g. Stellick v. United States Dep't of Educ.*, No. 11-CV-0730, 2013 U.S. Dist. LEXIS 25058, 2013 WL 673856, (D. Minn. 2013) ("nothing in the FCRA waives the sovereign immunity of the [ED]"); T*aylor v. United States*, No 09-CV-2393, 2011 U.S. Dist. LEXIS 56797, 2011 WL 1843286, at *5 (D. Ariz.) (same); *Gillert v. United States Dep't of Educ.*, No. 09-CV-6080, 2010 U.S. Dist. LEXIS 93035, 2010 WL 3582945, at *3-4 (W.D. Ark.) (same); *Ralph v. U.S. Air Force MGIB*, No. 06-CV-2211, 2007 U.S. Dist. LEXIS 100089, 2007 WL 3232593, at *3 (D. Colo.) (same); *Kenney v. Barnhart*, No. SACV 05-426, 2006 U.S. Dist. LEXIS 51068, 2006 WL 2092607, at *9 (C.D. Cal.) (same); *see also Al-Malik v. United States Dep't of Educ.*, 2011 U.S. Dist. LEXIS 96753, 7-8 (N.D. Cal. Aug. 29, 2011) (finding that plaintiff failed to overcome his burden to prove that sovereign immunity was waived under the FCRA).

In *Stellick v. United States Dep't of Educ.*, No. 11-CV-0730, 2013 U.S. Dist. LEXIS 25058, 2013 WL 673856, (D. Minn. 2013), the Court provides a detailed analysis in finding that the FRCA does not waive sovereign immunity. There, the plaintiff alleged that the federal government was acting as a CRA, and thus liable for damages under the FRCA. *Id.* The Court noted that at the time the FCRA was enacted in 1970, its remedial provisions did not apply to "persons" but to consumer-reporting agencies, and as "[a]s far as the Court is aware, no agency of the federal government was acting as a consumer-reporting agency in 1970." *Id.* at *9. Thus, the Court reasoned, it is doubtful that Congress believed that the federal government would be considered a "consumer-reporting agency" and thus, would not have felt the need to create an express exception in the Act. *Id.* at *9-10. The Court also found it unlikely that Congress intended to subject the United States to putative damages or criminal penalties without a more express waiver, as it was shown it could do in 15 U.S.C. § 1681u. *Id* at *10-11.

Here, assuming for the purposes of this motion only that the ED is a "furnisher" as contemplated by the FCRA[4], the FCRA nevertheless does not waive sovereign immunity. First, plaintiff will be unable to point to anything in the legislative history that would demonstrate that Congress intended, or even considered, that the 1996 amendments would subject the United States to such broad and substantial liability, notwithstanding the definition of "person" that was left unchanged. As such, it cannot be said that Congress intentionally and unequivocally expressed a desire to waive the United States' sovereign immunity. Notably, if this Court holds that the term "person" must mean the United States in every instance of the Act, then a waiver of sovereign immunity could subject the United States to criminal sanctions, and would permit a State to assert a claim against the United States. *See* 15 USCS § 1681q, 1681s. Absent an express

---

[4] Plaintiff alleges that ED "directly or indirectly causes credit information to be furnished" to CRAs as contemplated by the FCRA. *See* Complaint at ¶ 7.

and unambiguous waiver, other courts have recognized that such a suggestion is "patently absurd." *United States v. Singleton*, 165 F.3d 1297, 1300 (10th Cir. 1999) (*en banc*). Nor is it clear that Congress even considered that the United States could be a "furnisher" of information, where, as here, the ED uses a loan servicer to perform loan serving functions. Similarly, it is unlikely that the Congress would have intended to expand the liability to the United States under a circumstance as is present here, where a borrower of federal loans asserting a claim of identity theft has an administrative remedy to seek discharge under the Higher Education Act as outlined in 34 C.F.R. § 685.214. *See e.g. Ogunmokun v. Am. Educ. Servs.*, 2014 U.S. Dist. LEXIS 134098, 12-13 (E.D.N.Y. 2014). Finally, Congress demonstrated that it knew how to expressly waive its sovereign immunity in the FCRA, when it did so for an unrelated provision contained in the FCRA. 15 U.S.C. § 1681u. As such, where it did not make such an express statement to do so in §§ 1681n or 1681o, this Court should not infer that was the result intended by Congress.

In sum, absent a showing a Congressional intent, because the definition of "person" was enacted in 1970, and the imposition of damages at issue here were enacted in 1996, reliance on the definition of the term "person" from 1970 did not reflect an expectation that the FCRA would be the basis for a damages claim against the United States.

### iii. The Seventh Circuit Analysis in *Bormes* Should be Rejected

Only one appellate court has squarely addressed the issue, and held that sovereign immunity under the FCRA was waived, but dismissed the complaint in favor of the United States on other grounds. *Bormes v. United States*, 759 F.3d 793 (7th Cir. Ill. 2014). However, the Seventh Circuit's reasoning in *Bormes* should be rejected, as it is clear that it is based upon erroneous assumptions and the Court merely *inferred* that Congress intended to waive sovereign immunity. In doing so, the Seventh Circuit ignored the well-established Supreme Court

precedent which holds that statutory language alone cannot be dispositive when answering the important question of sovereign immunity.

First, the Seventh Circuit improperly found it questionable that the United States could be required, under the FRCA, to comply with the substantive requirements of the Act, but not be subjected to damages. *Bormes v. United States*, 759 F.3d 793 (7th Cir. Ill. 2014) ("If the United States is a 'person'…for the purposes of duties, how can it *not* be one for the purpose of remedies?"). However, the question of remedy is distinct from the question of statutory duty, and the Supreme Court has rejected the premise that the two are the same. *See Emps. of the Dep't of Pub. Health & Welfare* v. *Dep't of Pub. Health & Welfare,* 411 U.S. 279, 283-84 (1973) (holding that Congress provided coverage under the Fair Labor Standards Act to state employees without permitting state employees to sue the State for damages"); *U.S. Dep't of Energy* v. *Ohio*, 503 U.S. 607, 615 (1992); *Atascadero State Hosp*. v. *Scanlon*, 473 U.S. 234, 244-46 (1985) ("The court erred, however, in concluding that because various provisions of the Rehabilitation Act are addressed to the States, a State necessarily consents to suit in federal court by participating in programs funded under the statute").

Second, it appears that in conflating the issue of the Act's substantive requirements with waiving sovereign immunity with respect to liability, the Court's decision is based upon an incorrect holding that immunity was waived in 1970. *See Bormes*, 759 F.3d at 798. However, the 1970 definition did not operate as a waiver for damages, as the 1970 legislation only imposed damages upon "Any consumer reporting agency or user of information." Pub. L. No. 104-208 § 2412(a) (d). Thus, the question that needs to be addressed is whether Congress waived immunity when it amended FCRA's remedial provisions in 1996 to impose liability, for the first time, on "persons" generally. However, because the Seventh Circuit found that the United States

waived sovereign immunity in 1970, it found that [t]he absence of legislative history discussing sovereign immunity in 1996 is hardly surprising." *Bormes v. United States*, 759 F.3d at 795. However, here, if sovereign immunity was waived at all, it was done so in 1996, and thus, the lack of legislative history is instructive.

Third, the Seventh Circuit misunderstood the government's concern that "three provisions of the FCRA expose 'persons' to criminal penalties, which in principal could include state prosecutions. 15 U.S.C. §§ 1681n, 1681p, 1681s." The Court found it unremarkable that federal employees could be held criminally liable. *Bormes v. United States*, 759 F.3d at 796. But here, the concern is that a federal agency—not employee—might be subject to such liability should the term "person" be construed so broadly.

Finally, the Seventh Circuit's holdings on sovereign immunity have differed from that of the Fourth Circuit, in that, while the Fourth Circuit has clearly held that the issue of sovereign immunity is jurisdictional, the Seventh Circuit holds that it is not. *See Collins v. United States*, 564 F.3d 833, 837-38 (7th Cir. 2009). As such, for the reason set forth above, this Court should reject the holding in *Bormes*, and find that the FCRA has not unequivocally waived sovereign immunity.

## CONCLUSION

For the reasons discussed above, all claims asserted against the ED should be dismissed for lack of jurisdiction.

                                          Respectfully submitted,
                                          Rod J. Rosenstein
                                          United States Attorney

By:           /s/
                                          Jane E. Andersen (Bar No: 802834)
                                          Assistant United States Attorney
                                          36 South Charles Street, 4th Floor
                                          Baltimore, Maryland 21201
                                          (p) 410-209-4892
                                          Jane.Andersen@usdoj.gov
                                          *Counsel for the United States of America*