IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARLAND

Anthony Robinson

      Plaintiff,

v.                                        Case No. 8:15-cv-00079-GJH

Pennsylvania Higher Education Assistance Agency *et al*.

      Defendants.

**PLAINTIFF'S OPPOSITION TO DEFENDANT UNITED STATES DEPARTMENT OF EDUCATION'S MOTION TO DISMISS AMENDED COMPLAINT FOR LACK OF JURISDICTION**

    Plaintiff, Anthony Robinson, by and through counsel, hereby opposes the Defendant United States Department of Education's Motion to Dismiss for Lack of Jurisdiction, and in support of his opposition, offers the following memorandum of law.

**OVERVIEW**

    This case is a clear example of why Congress waived the government's sovereign immunity under the Fair Credit Reporting Act ("FCRA"). While the Defendant United States Department of Education ("USDE") urges the Court to construe the statute to protect the government from potential exposure to FCRA claims, the purpose of the FCRA is clear in that ***it is to protect the consumer from inaccurate credit reporting***. If the Court were to accept the USDE's interpretation, then consumers and the Courts would have no power under the FCRA to correct inaccurate credit reporting of the USDE. This case is an example of how the USDE would abuse that power if it believes that it is immune from the provisions of the FCRA.

## BACKGROUND

Plaintiff was the victim of identity theft where the USDE created a student loan account in his name without Plaintiff's authorization. For nearly four years, the Plaintiff has endeavored to have the fraudulent student loan accounts removed from his credit report to no avail. USDE, feeling entitled to immunity from provisions of the FCRA, has disregarded its obligation under the FCRA and has engaged in an ongoing harassment campaign to coerce the Plaintiff into paying the fraudulent accounts. USDE is obligated by the FCRA to cease furnishing credit information of an account that is subject to an identity theft report. Despite the submission of an identity theft report from the Plaintiff to the USDE, it still refuses to cease reporting the fraudulent student loan accounts to the credit bureaus. Even as of today, the USDE is still reporting the information to the credit bureaus.   It is only because the credit bureaus have blocked the reporting of the student loan accounts that USDE's obstinate and illegal credit reporting is not currently tarnishing the Plaintiff's credit profile.

## ARGUMENT

### THE FCRA CONTAINS CLEAR LANGUAGE THAT EXPRESSLY WAIVES THE UNITED STATES' SOVEREIGN IMMUNITY.

Congress intentionally and expressly waived the sovereign immunity of the United States under the FCRA by including the "government" in the definition of "person," 15 U.S.C. §1681a(b), and then making a "person" liable to a consumer for damages for violations of the FCRA.   15 U.S.C. §1681n(a) & §1681o(a).   The statute clearly states that the government, its subdivisions and agencies are liable for damages for willful or negligent violations of the FCRA,

and the USDE's arguments fail to explain why this Court should exclude the United States' government from the plain meaning of "*any… government.*"

As in all statutory construction cases, the inquiry begins with the language of the statute. *Clark v. Absolute Collection Service, Inc.*, 741 F. 3d 487, 488-90 (4th Cir. 2014) citing *Lamie v. U.S. Tr.*, 540 U.S. 526, 534 (2004). "[W]hen the statute's language is plain, the sole function of the courts — at least where the disposition required by the text is not absurd — is to enforce it according to its terms." *Id.* (internal quotation marks omitted). Under well-established principles of statutory construction, the Court must "give effect, if possible, to every clause and word of a statute." *Clark* quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (internal quotation marks omitted). If possible, a court should avoid an interpretation that renders any "clause, sentence, or word ... superfluous, void, or insignificant." *Clark* quoting *Duncan v. Walker,* 533 U.S. 167, 174 (2001).[1]  In cases involving questions of sovereign immunity, the inquiry must also begin with the language of the statute.  See *Library of Congress v. Shaw*, 478 U.S. 310, 319 (U.S. 1986, sovereign immunity was not waived regarding interest primarily because the statute "contains no reference to interest").

The pertinent language of the FCRA reads "Any person who willfully fails to comply with any requirement imposed under [the FCRA] is liable to that consumer" for actual damages,

---

[1] When confronted with a question of statutory interpretation, our inquiry begins with an examination of the language used in the statute. *Faircloth v. Lundy Packing Co.*, 91 F. 3d 648, 653 (4th Cir. 1996) citing *Stiltner v. Beretta U.S.A. Corp.,* 74 F.3d 1473, 1482 (4th Cir.1996). If the statutory language is clear and unambiguous, our inquiry ends there as well; we neither resort to an examination of the statute's legislative history nor apply the traditional rules of statutory construction. *Id. See Caminetti v. United States*, 242 U.S. 470, 485 (1917) ("[T]he rules which are to aid doubtful meanings need no discussion" when the statutory language is clear and unambiguous.). While a statute's legislative history is often helpful in resolving ambiguity, one of the time-honored maxims of statutory construction is that when the language of a statute is clear, there is no need to rely on its legislative history. *First United Methodist Church v. US Gypsum Co.,* 882 F. 2d 862, 865 (4th Cir. 1989) citing *Ex Parte Collett,* 337 U.S. 55, 61 (1949).

punitive damages, costs and attorney's fees. 15 U.S.C. §1681n(a) (*See also* 15 U.S.C. §1681o(a) making a person liable for damages for negligently failing to comply).   The word person is defined as "any individual ... government or governmental subdivision or agency, or other entity." 15 U.S.C. §1681a(b).   Here, Congress not only named the government, but it went further to specifically include governmental subdivisions and agencies. The FCRA utilized more specificity to identify the government than it did any other named person.

USDE maintains that the definition should not be given its natural meaning.   While it does not dispute that it is a "person" for the purpose of the FCRA's substantive requirements, it denies that §1681n authorizes damages.  As the court pointed out in *Bormes*, "if the United States is a 'person' under §1681a(b) for the purpose of duties, how can it *not* be one for the purpose of remedies?"  *Bormes v. United States*, 759 F.3d 793, 795 (7th Cir. Ill. 2014).  There is no language in the FCRA that allows any basis for a distinction.

A.    **The History of the FCRA Supports a Waiver of Sovereign Immunity Because Congress Intentionally Expanded the Scope of Liability to Any Person and the United States is Included as a Person**

As USDE describes, "in 1970, the FCRA principally regulated 'consumer reporting agenc[ies,]'" and monetary damages were only permissible against consumer reporting agencies ("CRAs") or users of information. *See* ECF 41-1, p. 6.  However, in 1996, Congress expanded the scope of the FCRA to regulate persons who furnish information to CRA's ("furnishers"), and amended the Act to subject "Any person" to liability for violations of the FCRA.  ECF 41-1, p. 7.  Thus, there can be no doubt that Congress intended to expand the number of persons and entities subject to liability under the FCRA.   Having intentionally expanded the scope of the FCRA to extend liability to "Any person," and having *not* amended the definition of "person" to exclude

4

the Federal Government, Congress demonstrated a clear intention to subject the Federal

Government to liability under the FCRA.

Congress's intent to waive sovereign immunity is further demonstrated by the fact that it

amended the FCRA again in 2003 without modifying the statute to remove the government as a

person covered by the Act.  In fact, the legislative history leading up to the passage of the 2003

Amendment reflected that Congress was fully aware that the government would be covered as a

person liable under the Act.  The House of Representative's Report, identified as H.R.Rep. No.

108-263, at 24 (2003), clearly establishes that Congress intended to include the federal

government as a furnisher of information under the Fair Credit Reporting Act:

> Any person with information related to consumers' financial activities or other
> relevant information may furnish data to a consumer reporting agency.
> Reporting is voluntary, but those who do furnish information have a duty to
> ensure its accuracy and to investigate disputes. The most common users and
> furnishers of information are credit card issuers, auto dealers, department and
> grocery stores, lenders, utilities, insurers, collection agencies, and **government
> agencies**. (emphasis added)

The H.R.Rep. No 108-263 unequivocally demonstrates that Congress has considered

whether a government agency is liable under the Act because it clearly states that government

agencies are one of the most common furnishers of information, and the act clearly makes

furnishers liable for damages.   Given that the 2003 Amendment to the FCRA is the latest and

most recent, it is the best indication of Congress' intent.

In order to conclude that Congress did *not* intend to extend liability under the FCRA to

the Federal Government, one must assume that Congress believed that the statute they were

enacting would not be given its plain meaning—an assumption that is not supported by the

history of the FCRA and Congress' intentional expansion of liability under the FCRA.  There is

simply no support for USDE's contention that Congress extended liability to any "person" in

1996 without reviewing the previously enacted definition of "person" from 1970, and USDE

provides no reason why this Court should assume that Congress expanded liability in 1996

without considering or understanding the scope of the increased liability.

### B.      This Court's Analysis Should Focus on the Language of the Statute

USDE claims that this Court *cannot* rely solely on the text of the statute to decide the

issue of whether Congress intended to waive the sovereign immunity of the United States,

alleging that there is "well-established Supreme Court precedent which holds that statutory

language alone cannot be dispositive when answering the question of sovereign immunity." ECF

41-1, pgs. 11-12]. Interestingly, USDE does not provide any citation to support that claim, which

is directly contradicted by the Supreme Court's statements in *Bormes* that:

> "Where, as in FCRA, a statute contains its own self-executing remedial scheme, we look
> only to that statute to determine whether Congress intended to subject the United States
> to damages liability," *United States v. Bormes*, 133 S. Ct. 12, 17 (2012), and

> "Since FCRA is a detailed remedial scheme, only *its own* **text** can determine whether the
> damages liability Congress crafted extends to the Federal Government." *Id*. at 19.

Under the direction of the Supreme Court to consider the text of the FCRA, the Seventh

Circuit properly concluded that Congress waived the United States' sovereign immunity, *Bormes*,

759 F.3d 793, 797, and this Court should conclude the same.  "It takes unequivocal language to

waive the national government's sovereign immunity, but this means unequivocal language in a

statute, not in a committee report." *Id*. at 796 (internal citations omitted).  The USDE's

contention that Congress cannot waive sovereign immunity by enacting an unambiguous statute

with unequivocal language unless Congress also confirms its intention to waive sovereign

immunity in its corresponding committee reports is simply without any merit.  *See,* e.g., *Swain v. Pressley*, 430 U.S. 372, 378-79, 97 S. Ct. 1224, 51 L. Ed. 2d 411 & n.11 (1977); *Harrison v. PPG Industries, Inc.*, 446 U.S. 578, 592, 100 S. Ct. 1889, 64 L. Ed. 2d 525 (1980) ("it would be a strange canon of statutory construction that would require Congress to state in committee reports or elsewhere in its deliberations that which is obvious on the face of a statute"). The facts remain that the United States government is a person under the FCRA and the FCRA subjects "any person" who violates its provisions liability, showing that Congress enacted an unequivocal waiver of sovereign immunity.

When deciding whether sovereign immunity has been waived, this Court should follow the example of the Supreme Court, which focuses its analysis primarily on the statutory language.  For example, in *Library of Congress v. Shaw*, the Supreme Court's reasons for finding that sovereign immunity had not been waived depended almost entirely on the language of the statute.  *Shaw*, 478 U.S. 310.  First, the Court noted that it should not construe any waiver "beyond what the ***language requires*,*" Id*. at 318, showing that an analysis should begin with the language of the statute.  Next, the Court stated that there can "be no consent by implication or by use of ambiguous language,"  again focusing on the importance of the language at issue. *Id*. Finally, in finding sovereign immunity had not been waived, the Court focused primarily on the language of the statute and reasoned that: (1) the statute "contain[ed] no reference to interest," *Id*. at 319; (2) the language at issue (making the government liable "the same as a private person") had previously been narrowly construed in other statutes to find against a waiver, *Id*. at 320; (3) the term "reasonable" in reference to attorney's fees was an "ambiguous use" of the word that did not embody a choice to include interest, *Id*.; and (4) liability for "costs" does not

include interest because interest is "considered as damages," not costs.  *Id*. at 321.  Thus, this Court should examine the text of the statute and find that Congress intended to waive sovereign immunity because the language in the FCRA, unlike the statute in *Shaw*, expressly and unambiguously makes the federal government, as a "person," liable for "damages."

  **C.**  **The FCRA's Unambiguous Definition of "Person" As Including the "Government" Shows that Congress Intended to Waive Sovereign Immunity**

  Importantly, the USDE does not articulate any argument that the word "government" is ambiguous or that the Federal Government is not included in the FCRA's definition of person. Instead, the USDE urges the Court to ignore the plain language of the statute and to compare the FCRA to dissimilar statutes which contained definitions that did *not* include the United States, statutes which contained undefined words, or statutes which were analyzed on the issue of the waiver of state—not federal—sovereign immunity.  See ECF 41-1, p. 7-8.

  In *Department of Energy v. Ohio*, for example, the Supreme Court reviewed two statutes whose definitions of person covered "States, subdivisions of States, municipalities, and interstate bodies," but did *not* "include the United States," which made the civil-penalties sections at issue inapplicable to the United States.   503 U.S. 607, 617-618 (1992).   In finding that sovereign immunity had not been waived, the Supreme Court focused on the fact that the statutes at issue contained multiple definitions of "person," having different definitions which applied to different sections, and the civil penalty section at issue did not define person as including the United States.  *Id*. at 618-619.  In contrast, the FRCA contains one single definition of "person" and that definition includes "Any government," which undoubtedly includes the United States.

In *United States v. Singleton,* the court reviewed a statute that subjected "whoever" violated the statute to criminal prosecution, and given that statute did not define the term "whoever," the court presumed that Congress "intended to employ the common meaning of the word." 165 F.3d 1297, 1300 (10th Cir. 1999). The court found that "'whoever' connotes a being," not an "inanimate entity" such as the Federal Government, concluding that Congress had not waived sovereign immunity of the United States when it subjected "whoever" to prosecution. *Id*. Again, the statute at issue did *not* contain a definition that included the Federal Government, and is entirely unlike the FCRA which explicitly defines "person" as including the "government".

In addition to relying on cases which did not include the United States in the relevant definition or which lacked definitions entirely, the USDE relies on the reasoning from cases which analyze the sovereign immunity of the states and bear absolutely no relevance to this case. See USDE's MTD [ECF 41-1] (citing *Sossamon v. Texas*, 131 S. Ct. 1651 (2001); *Employees of the Department of Health & Welfare v. Department of Public Health & Welfare*, 411 U.S. 279 (1973). The consideration of Congress' waiver of state sovereign immunity is different than a waiver of federal sovereign immunity because Congress' power to waive state sovereign immunity is limited by the Eleventh Amendment, making the presumption against waiver even stronger. This distinction is evident in the case relied upon by USDE, *Employees of the Dep't of Pub. Health & Welfare v. Dep't of Pub. Health & Welfare*, in which the Supreme Court begins the opinion by quoting the text of the Eleventh Amendment, 411 U.S. 279, 280 (U.S. 1973), makes repeated references to the state's "constitutional immunity," *Id*. at 285, and starts its discussion with the "history and tradition of the Eleventh Amendment." *Id*. at 284. Additionally, that case is distinct because the Court found that in passing the statute at issue, the Fair Labor Standards

Act, "private enforcement of the Act was not a paramount objective" of Congress, *Id*., whereas a clearly stated purpose of the FCRA is to give individuals the power to correct errors in their credit reports and to have legal means of redressing harm caused by the failure of CRAs and furnishers to correct inaccurate information.

USDE also relies on the holding in *Library of Congress v. Shaw*, which is entirely unlike this case for many reasons. *See* 478 U.S. 310 (1986).   First, in *Shaw*, the Court found that Congress had not intentionally waived sovereign immunity for the award of interest because the "no-interest rule" which has been enforced since 1888 requires an "express congressional consent to the award of interest ***separate*** from a general waiver of immunity to suit." *Id*. at 314-15 (emphasis added).   The *Shaw* holding depended primarily on the fact that interest is "an element of damages separate from damages on the substantive claim," *Id*., but at issue in this case are general damages, not interest, and the language of the FCRA specifically subjects the government to "damages."   Under the FCRA, there is no corresponding rule which calls for an "added gloss of strictness upon these usual rules" that would require separate waivers of immunity for each provision of the FCRA.    *Id*. at 318.   Second, the statute at issue in *Shaw* waived the sovereign immunity of the United States for "costs the same as a private person," which included "a reasonable attorney's fee," but the statute did not mention interest.  Again, the FCRA specifically subjects the government to general damages.  Third, in holding that Congress did not waive sovereign immunity with regard to interest because Congress did not specifically include "interest" in the language of the statute, the Supreme Court did exactly what USDE encourages this court *not* to do—it focused primarily on the language of the statute.  *Id*. at 319 (the statute "contains no reference to interest). It is also important to note that subsequent to the

holding in *Shaw*, Congress modified the statute to allow interest on judgments against the United States, suggesting that the *Shaw* Court may have incorrectly interpreted the original statute. *See Landgraf v. Usi Film Prods.*, 511 U.S. 244, 251 (U.S. 1994).

The fact is, USDE has not cited any cases in which the Supreme Court has interpreted a statutory definition as clear as that of "person" in the FCRA and concluded that such definition did not impose liability on the Federal Government because there is <u>no sound reason to do so</u>.

> **D.    The Consequences of Waiving Sovereign Immunity Are Appropriate Because the United States Voluntarily Acts as a Substantial Furnisher**

USDE encourages this Court to ignore the plain language of the FCRA and instead focus on "the nature and consequences of the enactment," ECF 41-1, p. 8, which would include subjecting the United States to damages that it claims "would be broad and substantial."  ECF 41-1, p. 9.  The USDE's claim is unsupported by any evidence and it ignores an important limitation of the liability imposed under the FCRA.  Given that the United States does not act as a credit reporting agency, it would primarily be subject to liability for actions as a furnisher,[2] and would only be subject to suits by individuals for violations of 15 U.S.C. §1681s-2(b).  *See* 15 U.S.C. §1681s-2(c) (§1681n and 1681o do not apply to violations of §§1681s-2(a) or §1681s-2(e)).    With the United States acting as one of the world's largest creditors and furnishing information affecting a large number of consumers, it is appropriate to conclude that Congress intentionally waived the sovereign immunity of the United States in order to meet the FCRA's objective of protecting consumers from inaccurate credit reporting.

---

[2]USDE does not contest that for the purposes of this motion the United States is a "furnisher" of information. See USDE's MTD [ECF 41-1, p. 10].

Even if "the interaction of §1681a(b) and §1681n(a)(2) creates excessive liability—which it won't if federal officers obey the statute—then the solution is an amendment, not judicial re-writing of a pellucid definitional clause." *Bormes*, 759 F.3d 793, 796, citing *Michigan v. Bay Mills Indian Community*, 134 S. Ct. 2024, 2033-34, 188 L. Ed. 2d 1071 (2014).  It is not the role of the judiciary to substitute its judgment for that of Congress when Congress has enacted statute with clear, unequivocal intentions by assuming that Congress must have failed to consider the consequences of the statute.  Additionally, it is not surprising that Congress chose to make the United States liable for punitive damages and criminal penalties. *See Bormes*, 2014 WL 3583937, *2-3 (Congress can authorize punitive awards against the United States) (The idea that a criminal prosecution of a federal employee alleged to have deliberately violated a federal statute might begin in state court is not so outlandish that we should read § 1681a(b) to mean something other than what it says.).

Further, a person is only liable under the FCRA if the person performs certain regulated activities, none of which are essential functions of the United States government.  The USDE certainly needs to supply student loans, but it *voluntarily* entered into the business of furnishing information which is not necessary to its essential functions. If the USDE seeks to limit its liability under the FCRA, then it can use unaffiliated servicers and/or debt collectors to collect its debts just as medical providers and many utility providers do.

### E.     The District Court Cases Relied Upon by USDE Are Unpersuasive

The USDE cites to several unpersuasive district court opinions to support its argument that the FCRA does not waive sovereign immunity, all of which were issued prior to the Seventh Circuit Court of Appeals holding that the FCRA expressly waives the United States sovereign

immunity.  *Bormes*, 759 F.3d 793.   The USDE relies primarily on the problematic opinion in *Stellick,* a case which is distinct from this case because the Plaintiff sued the United States as a credit reporting agency and not a furnisher.   *Stellick v. United States Dep't of Educ*., No. 11-CV-0730, 2013 U.S. Dist. LEXIS 25058, 2013 WL 673856 (D. Minn. 2013).   The fact that the Stellick case was filed against the United States as a CRA and not a furnisher is an important distinction because the *Stellick* court emphasized that the 1970 remedial provisions applied only to CRAs (meaning that no federal agency could have been held liable at the time the original statute was enacted), and further reasoned that it seems likely "that it simply never occurred to Congress that the NSLDS could be held liable under the FCRA" because "it is doubtful that Congress believed it was establishing a consumer-reporting agency when it created the NSLDS." *Id*. at *9-11.   Importantly, the *Stellick* court acknowledged that the United States must comply with the substantive requirements of the FCRA, but nonetheless found that the United States was immune from the remedial provisions of the FCRA.   In coming to this duplicitous holding, the *Stellick* court did *not* find that the statutory language was ambiguous, ("Congress was thus crystal clear that a federal agency is a 'person' for purposes of the FCRA"), and essentially found that Congress must have overlooked the issue of the United States' liability when it amended the FCRA in 1996 to extend liability to any person.

USDE asks this Court to adopt *Stellick's* flawed reasoning, to ignore that fact that Congress left the definition of "person" unchanged in both 1996 and 2003, and to focus solely on its assertion that there is not "anything in the legislative history that would demonstrate that Congress intended, or even considered, that the 1996 amendments would subject the United States" to liability.  ECF 41-1, p. 10.   USDE's reliance on legislative history is inapposite to the

holdings of the Fourth Circuit. *See First United*, 882 F. 2d at 865 (While a statute's legislative history is often helpful in resolving ambiguity, one of the time-honored maxims of statutory construction is that when the language of a statute is clear, there is no need to rely on its legislative history.); and see fn. 1 *supra*.   Further, USDE's argument that it is not "clear that Congress even considered that the United States could be a 'furnisher' of information" is directly contradicted by H.R.Rep. No. 108-263 at 24 which names "government agencies" as one of the "most common … furnishers of information," and further undermined by USDE's description of the United States government as one of the world's largest creditors.  ECF 41-1, p. 9.

USDE also cites several district court cases whose holdings and reasoning are simply unpersuasive.   One case cited by USDE explicitly states that it does not decide whether sovereign immunity has been waived under the FCRA.    *Al-Malik v. United States Dep't of Educ.,* 2011 U.S. Dist. LEXIS 96753, *8 (N.D. Ca. Aug. 29, 2011) ("[**w]ithout deciding whether sovereign immunity has been waived under the FCRA**, this order finds that subject-matter jurisdiction over plaintiff's third student-loan grievance against the USDOE has not been shown. That is, the fact that this particular plaintiff failed to show that sovereign immunity has been waived under the FCRA **does not foreclose the possibility that some other plaintiff might succeed in doing so in the future**.")  Another case contains no discussion whatsoever of the issue of sovereign immunity. *Ralph v. U.S. Air Force MGIB*, 2007 U.S. Dist. LEXIS 100089 (the Defendant's motion to dismiss was unopposed).   In *Kenny v. Barnhart*,  2006 U.S. Dist. LEXIS 51068, the court does provide a more detailed analysis, but is focused on the United States' liability as a credit reporting agency.   None of these cases are helpful to this Court's analysis.

14

## CONCLUSION

The facts are that Congress knows the United States is furnisher of information, it expanded liability under the FCRA to include furnishers of information, and the clear language of the statute expressly waives the sovereign immunity of the United States by making any "person" liable for violations.  Thus, pursuant to Fed. R. Civ. P. 12(b)(6), this Court should enter an Order denying dismissal in favor of the Plaintiff, Anthony Robinson, and against the Defendant, USDE.

Respectfully submitted,

_____/s/_____
Quinn Breece Lobato (Bar No. 18579)
Lobato Law
8583 Seasons Way
Lanham, MD 20706
(240) 305-4770
quinn.lobato@gmail.com
*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I certify that on June 29, 2015, a copy of the foregoing Opposition to Defendant's Motion to Dismiss Amended Complaint was caused to be served on all parties by filing the document with the Clerk of Court under the Court's CM/EMF system, which electronically transmits a copy to the registered participants as identified on the Notice of Electronic Filing.

_____/s/_____
Quinn B. Lobato
*Counsel for Plaintiff*