**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| ANTHONY ROBINSON | * |
| | * |
| Plaintiff, | * |
| | * |
| v. | *   Civil No. 15 CV 0079 (GJH) |
| | * |
| PENNSYLVANIA HIGHER EDUCATION | * |
| ASSISTANT AGENCY d/b/a FEDLOAN | * |
| SERVICING, et al | * |
| | * |
| Defendant. | * |

**********

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF UNITED STATES DEPARTMENT OF EDUCATION'S MOTION TO DISMISS THE AMENDED COMPLAINT FOR LACK OF JURISDICTION**

**INTRODUCTION**

This case arises under the Fair Credit Reporting Act ("FCRA") concerning federal loans provided to plaintiff for use of his dependent daughter to attend school. Plaintiff claims that he did not authorize the approval of these loans and that the signature on the application was forged, despite the fact that his daughter received the benefit of the loan. Plaintiff is not seeking discharge of these loans, but instead, alleges that the loans should no longer be reported to credit reporting agencies.

On June 3, 2015, plaintiff filed an amended complaint. (ECF # 38). On June 12, 2015, Defendant United States Department of Education ("ED") moved to dismiss the amended complaint pursuant to Rule 12(b)(1) of the Federal Rules of Procedure ("FRCP") for lack of subject matter jurisdiction. (ECF # 41). On June 29, 2015, Plaintiff filed opposition to ED's motion. (ECF # 46). Defendant ED hereby submits this reply memorandum of law in further support of its motion to dismiss the amended complaint.

Based upon a review of plaintiff's opposition to Defendant ED's motion, it is clear that there are no disputes of fact with respect to the issue of jurisdiction. Instead, plaintiff asks this Court to assume that Congress intended to waive sovereign immunity based solely upon the application of a 1970 statutory definition to a 1996 amendment to the Fair Credit Reporting Act ("FCRA"). However, a waiver of federal sovereign immunity must be clear and unequivocal. The sole reliance on a statutory definition enacted over twenty years earlier, coupled with a lack of any legislature history to support any suggestion that Congress even considered whether the United States should be subjected to damages, requires a finding that there has been no waiver of sovereign immunity under the FCRA.

## ARGUMENT IN REPLY

### I. Plaintiff Fails to Demonstrate that Congress Intentionally Waived Sovereign Immunity under the Fair Credit Reporting Act

Plaintiff incorrectly argues that the "statute clearly states that the government, its subdivisions and agencies are liable for damages," *See* Memo. in Opp. at 2. Instead, because the definition of "person" was defined in 1970, and the statute was amended in 1996 to permit damages without an express statement that damages should be available against the United States, plaintiff has failed to demonstrate the requisite unequivocal expression from Congress that is necessary to demonstrate that damages against the United States was not done "inadvertently or without due deliberation." *See e.g. Library of Congress v. Shaw*, 478 U.S. 310 (1986); *U.S. Dep't of Energy* v. *Ohio*, 503 U.S. 607, 615 (1992) ("any waiver of the National Government's sovereign immunity must be unequivocal."). Indeed, plaintiff does not dispute that that his claim rests upon Congressional *inaction*, as opposed to an unambiguous affirmative act that is necessary when he argues "having *not* amended the definition of 'person' to exclude the Federal Government, Congress demonstrated a clear intention to subject the Federal Government

2

to liability under the FRCA."*See* Memo. in Opp. at 4. However, plaintiff fails to address the fact that when Congress intends to waive sovereign immunity it does so knowing, as it did within the FCRA in an unrelated provision. Specifically, § 1681u expressly states that the "United States" is subject to actual damages, punitive damages, costs, and attorney fees for violating that particular provision. 15 U.S.C. § 1681u. Plaintiff fails to address or provide any explanation as to why § 1681u would be necessary at all if the general damages provision found in §§ 1681n, 1681o would have otherwise applied. *See* 15 U.S.C. §§ 1681n, 1681o. See *Stellick v. United States Dep't of Educ*., 2013 U.S. Dist. LEXIS 25058 (D. Minn. 2013) ("If Congress waived sovereign immunity as to all violations of the FCRA, then § 1681u would be unnecessary.").

In light of the fact that plaintiff admits that he necessarily is relying upon *inaction* by Congress to support a waiver of sovereign immunity, it is notable that plaintiff is unable to point to anything in the legislative history to suggest that Congress even considered the decision to expose the United States to damages under the FRCA in enacting the 1996 amendments. This is important, because plaintiff is relying up on a generally applicable statutory definition of the term "person" that was defined in the statute more than twenty-years before the amendment permitting damages. Indeed, the term "person" is relevant in numerous portions of the Act, and does not just relate to the provision of liability, or even affirmative obligations of "persons." For example, § 1681e prohibits a consumer reporting agency to furnish a consumer report "to any person" unless certain requirements are met. 15 U.S.C. § 1681e.  Section 1681m, requires "any person" who takes an adverse action with respect to information contained in a consumer report, such as an employment decision, to comply with certain requirements. This, coupled with the fact that Congress demonstrated how to expressly waive federal sovereign immunity in § 1861u,

and the lack of any Congressional history demonstrating Congress considered whether or not to waive federal sovereign immunity in 1996, shows that there is ambiguity in the statute.

Instead, plaintiff cites to a United States House of Representatives Report, identified as H.R. Rep. No. 108-263 (2003) ("H.R. Report"), purporting that the H.R. Report supports a finding that federal sovereign immunity was waived. However, the H.R. Report was issued in 2003. As such, it sheds no light on congressional intent in 1996. Moreover, the H.R. Report relied upon contains absolutely no discussion about liability or damages. Instead, it merely states that "government agencies" are common "users and furnishers of information." *See* H.R. Report at 24. As set forth in ED's moving papers, when determining whether sovereign immunity has been waived, the question of remedy is distinct from the question of statutory duty, and the Supreme Court has rejected the premise that the two are the same. *See Emps. of the Dep't of Pub. Health & Welfare* v. *Dep't of Pub. Health & Welfare,* 411 U.S. 279, 283-84 (1973) (holding that Congress provided coverage under the Fair Labor Standards Act to state employees without permitting state employees to sue the State for damages"); *see also U.S. Dep't of Energy* v. *Ohio*, 503 U.S. 607, 628 (1992) ("Congress had no intent to subject the United States to an enforcement mechanism that could deplete the federal fisc regardless of a responsible officer's willingness and capacity to comply in the future."); Thus, even if by 2003 Congress understood that government agencies may be users or furnishers of information as contemplated by the FCRA, there remains no clear indication that Congress intended to subject the United States to damages for violations of the FCRA, except where otherwise expressly provided. Indeed, it is important to recognize that defendant is unaware of any Courts holding that the FCRA waived sovereign immunity by 2003, thus, it is not surprising that Congress would not have deliberated on the issue.

Plaintiff's attempt to distinguish *Library of Congress v. Shaw*, 478 U.S. 310 (1986) (*superseded by statute*) is unavailing, as it clearly demonstrates that Courts must construe statutes narrowly when dealing with the issue of waiver of federal sovereign immunity and find that an affirmative waiver was made. *See* Memo. in Opp. at 7. In *Library of Congress v. Shaw*, the Supreme Court reversed the D.C. Circuit's finding that sovereign immunity had been waived with respect to whether the federal government could be liable for interest as a component of attorney fees. The applicable statute clearly stated:

> in any action or proceeding under this subchapter the court, in its discretion, may allow the prevailing party…a reasonable attorney's fee as part of the costs, and the Commission and *the United States shall be liable for costs the same as a private person*.

*Shaw v. Library of Cong.*, 747 F.2d 1469, 1475 (D.C. Cir. 1984). The D.C. Circuit reasoned that because a private person could be held liable for interest as an ingredient of Title VII attorneys' fees awards, and the statute clearly stated that the United States is liable for costs the same as a private person, that Congress expressly waived sovereign immunity for such interest. *Id*. However, in overturning the D.C. Circuit's decision, the Supreme Court noted that based upon the general principle that the United States could not be liable for such interest; the statutory language was insufficient to overcome the presumption against waiver. *Library of Congress v. Shaw*, 478 U.S. 310, 319 (1986) (language "does not represent the requisite affirmative congressional choice to waive the no-interest rule.").

Similarly, plaintiff fails to acknowledge or distinguish Supreme Court precedent that holds that when confronted with a purported waiver of the Federal Government's sovereign immunity, the Court must "comfortably conclude…that Congress intended to subject the Federal Government to award of monetary damages" and that any ambiguities must be construed in favor of immunity. *Lane v. Pena*, 518 U.S. 187, 200 (1996); *United States* v. *Williams*, 514 U.S. 527,

531, (1995) (when confronted with a purported waiver of the Federal Government's sovereign immunity, the Court will "construe ambiguities in favor of immunity"). Indeed, the mere fact that numerous district courts have held that there is no intentional waiver of sovereign immunity contained within the FCRA demonstrates that the statute is not so devoid of ambiguities, even if, arguably, reasonable minds could differ.

Plaintiff's reliance on *Clark v. Absolute Collection Serv.*, 741 F.3d 487, 490-491 (4th Cir. N.C. 2014) is not instructive as it does not address the unique issues concerning sovereign immunity and is otherwise inapposite. There, the Court was required to construe a notice provision contained within a statute regulating the conduct of debt collectors. The statute in question required that a debt collector provide notice in certain circumstances. However, the statute did not specify whether written notice was required or whether oral notice was sufficient. The Court refused to read into the statute a requirement that the notice must be in writing. Here, defendant is not asking that the Court read in any additional language into the FCRA. Instead, the Court's holding in *Clark v. Absolute Collection Serv.*, 741 F.3d 487, 490-491 (4th Cir. N.C. 2014), supports the ED's position, in that the Court held that where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Id*. Here, as addressed above, the FCRA does expressly waive sovereign immunity with respect to the United States in § 1861u for an unrelated provision. Indeed, in *Shaw v. Library of Cong.*, 747 F.2d 1469, 1475 (D.C. Cir. 1984), the statute at issue expressly stated that "the United States shall be liable…" and did not rely upon a general statutory definition that was enacted twenty years earlier, as plaintiff asks the Court to do here. Both these examples demonstrate that Congress knows how to expressly waive federal sovereign immunity and when it does so, it does

so expressly. Thus, plaintiff is incorrect when he states that defendant does not assert that the language of the statute is ambiguous. *See* Memo. in Opp. at 8. What is ambiguous is whether Congress intended to waive federal sovereign immunity based upon a statutory definition that defined the term "person" twenty years earlier.

Next, plaintiff asks this Court to ignore Supreme Court precedent derived from cases that analyze the issue of state sovereign immunity. *See* Memo in Opp. at 9 ("the USDE relies on the reasoning from cases which analyze the sovereign immunity of the states and bear absolutely no relevance to this case."). However, a waiver of both federal and state sovereign immunity must be done knowingly, and must be unequivocal. Thus, cases analyzing state sovereign immunity on the issue of Congress's clear expression are clearly instructive to the case at bar. *See e.g. Employees of the Department of Health & Welfare v. Department of Public Health & Welfare*, 411 U.S. 279 (1973) ("Congress, acting responsibly, would not be presumed to [abrogate state sovereign immunity] silently" noting that there was "not a word in the history of the 1966 amendments to indicate a purpose of Congress" to subject States to suit in federal court.").

Similarly, plaintiff attempts to distinguish *Stellick v. United States Dep't of Educ.*, No. 11-CV-0730, 2013 U.S. Dist. LEXIS 25058, 2013 WL 673856, (D. Minn. 2013), based upon the fact that, there, it was alleged that ED was acting as a consumer reporting agency, instead of a furnisher of information. However, this is a distinction without a difference, as the issue to be litigated in *Stellick* and here is whether the 1996 amendments to the FCRA waived sovereign immunity based solely on a definition of the term "person" that was included in the 1970 version of the FCRA.

Plaintiff relies upon the Seventh Circuit's analysis in *Bormes v. United States,* which found it questionable that the United States could be required, under the FRCA, to comply with

the substantive requirements of the Act, but not be subjected to damages. *Bormes v. United States*, 759 F.3d 793 (7th Cir. Ill. 2014) ("If the United States is a 'person'…for the purposes of duties, how can it *not* be one for the purpose of remedies?"). However, even if true, plaintiff fails to address, as did the Seventh Circuit, the Supreme Court precedent holding that the question of remedy is distinct from the question of statutory duty. *See Emps. of the Dep't of Pub. Health & Welfare* v. *Dep't of Pub. Health & Welfare,* 411 U.S. 279, 283-84 (1973) (holding that Congress provided coverage under the Fair Labor Standards Act to state employees without permitting state employees to sue the State for damages"); *U.S. Dep't of Energy* v. *Ohio*, 503 U.S. 607, 628 (1992) ("Congress had no intent to subject the United States to an enforcement mechanism that could deplete the federal fisc regardless of a responsible officer's willingness and capacity to comply in the future.").

Indeed, it is ED's contention that the Seventh Circuit's holding in *Bormes v. United States* is flawed based upon this false premise, as it held that sovereign immunity was waived in 1970—despite the fact that the damage provision at issue was not enacted until 1996. *See Bormes*, 759 F.3d at 798. Indeed, it was only because the Seventh Circuit found that the United States waived sovereign immunity in 1970, that it found that [t]he absence of legislative history discussing sovereign immunity in 1996 is hardly surprising." *Bormes,* 759 F.3d at 795. However, if sovereign immunity for damages was waived at all, it was done so in 1996, and thus, the lack of legislative history is instructive.

Even assuming *arguendo* that this Court does not find the lack of legislative history troubling, and finds that the statutory definition is persuasive, plaintiff fails to acknowledge that exceptions may nevertheless apply, even in the context of statutory interpretation outside sovereign immunity analysis. *See Lawson v .Suwannee Fruit & S.S. Co.*, 336 U.S. 198, 201

(1949) (holding that the term "disability" was not used as a term of art in the statute, despite the term being defined therein); *Northwest Austin Mun. Util. Dist. No. One v. Holder*, 557 U.S. 193, 206-207 (2009) ("statutory definition…does not apply to every use of the term 'political subdivision' of the Act."). Similarly, when determining whether Congress has acted sufficiently clearly and explicitly in defining a term, a court must consider the nature and consequences of the enactment, and not just the definition. *See Bond v. United States*, 134 S.Ct. 2077, 2091 (2014) ("correctly reading a statute demands awareness of certain presuppositions."). In *Bond*, the Supreme Court declined to give conclusive significance to the broad statutory definition of the term "chemical weapon" in a criminal statute based upon a "dissonance" between the term's "ordinary meaning and the reach of the definition." *Id*.

Here, if this Court holds that the term "person" means the United States in every instance of the Act, then a waiver of sovereign immunity could subject the United States to criminal sanctions, and would permit a State to assert a claim against the United States. *See* 15 USCS § 1681q, 1681s. Plaintiff, again, relies solely on the flawed reasoning of *Bormes v. United States*, to argue that here is nothing surprising about permitting criminal sanctions to be imposed against a federal employee. See Memo. in Opp. at 12. However, if plaintiff's argument is accepted, then the statute would permit criminal sanctions against the United States—not an employee. This proposition is unlikely.

Finally, while plaintiff seems to argue that he will be harmed without the right to sue the United States for damages, a borrower of federal loans asserting a claim of identity theft has an administrative remedy to seek discharge under the Higher Education Act as outlined in 34 C.F.R. § 685.214. *See e.g*. *Ogunmokun v. Am. Educ. Servs*., 2014 U.S. Dist. LEXIS 134098, 12-13 (E.D.N.Y. 2014).

9

In sum, unlike a general provision contained within a statute, waivers of sovereign immunity must be "unequivocally expressed" and must be construed strictly in favor of the retention of sovereign immunity. *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33-34 (1992); *FDIC v. Meyer*, 510 U.S. 471, 475 (1994); *U.S. Dep't of Energy v. Ohio*, 503 U.S. 607, 615 (1992); *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941); *Library of Congress v. Shaw*, 478 U.S. 310, 318 (1986); *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 685-686 (1983); *Pritchett v. Fed. Emergency Mgmt. Agency*, No. 14-CV-2996, 2014 U.S. Dist. LEXIS 157229 (D. Md. 2014). Here, because the definition of "person" was enacted in 1970, and the imposition of damages were enacted in 1996, mere reliance on the definition of the term "person" from 1970, and in the absence of any legislative history to the contrary, did not reflect an expectation that the FCRA would be the basis for a damages claim against the United States.

## CONCLUSION

For the reasons discussed above and in ED's moving papers, all claims asserted against the ED should be dismissed for lack of jurisdiction.

        Respectfully submitted,
        Rod J. Rosenstein
        United States Attorney

By:        /s/
        Jane E. Andersen (Bar No: 802834)
        Assistant United States Attorney
        36 South Charles Street, 4th Floor
        Baltimore, Maryland 21201
        (p) 410-209-4892
        Jane.Andersen@usdoj.gov
        *Counsel for the United States of America*

**CERTIFICATE OF SERVICE**

I certify that on July 16, 2015, a copy of the foregoing *Reply Memorandum of Law In Further Support of United States Department of Education's Motion to Dismiss the Amended Complaint for Lack of Jurisdiction* was caused to be served on all served parties by filing these document with the Clerk of the Court under the Court's CM/ECF system, which electronically transmits a copy to the registered participants as identified on the Notice of Electronic Filing.

______/s/________________
Jane E. Andersen
Assistant United States Attorney