## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARLAND

Anthony Robinson

      Plaintiff,

v.                                                Case No. 8:15-cv-00079-GJH

Pennsylvania Higher Education Assistance Agency *et al*.

      Defendants.

### PLAINTIFF'S MOTION TO RECONSIDER THE COURT'S ORDER GRANTING DEFENDANT UNITED STATED DEPARTMENT OF EDUCATION'S MOTION TO DISMISS

Plaintiff, Anthony Robinson, respectfully moves the court to reconsider ("Pl's Mot. to Reconsider") its Order granting Defendant United States Department of Education's Motion to Dismiss ("Order"). Plaintiff makes this motion pursuant to Local Rule 105.10 on the grounds that the Court's Order contains a clear error of law.

### OVERVIEW

The Court found that was unlikely Congress's inclusion of the word "government or governmental subdivision or agency" in the definition of "person" in the Fair Credit Reporting Act ("FCRA") was done with the intention of holding the United States liable for punitive or criminal damages. But, the Court also found that Congress did intend to include United States as a "person" with respect to the Act's substantive requirements. Regarding the specific provisions that the Court found were not intended to include the United States as a "person," the Court specifically identified provisions 15 U.S.C. §§1681n(a)(2) and 1681q. Importantly, the Court did

not find the language ambiguous, but rather found the clear language of the statute would produce absurd results. Essentially, the Court found Congress made a mistake and attempted to correct the mistake by rewriting the statute to remove the United States from the definition of "person" for the certain provisions §§1681n(a)(2) and 1681q of the Act.

In its Order, the Court has only pinpointed sections §§1681n(a)(2) and 1681q as absurd, not 1681o. Of course, the United States would like to conflate §1681o with §1681n and 1681q, but the absurdity argument simply does not pertain to §1681o. There is simply nothing at all absurd about Congress intending that the United States, when voluntarily acting as a furnisher of credit information, be held liable for violating its duty to conduct reasonable investigations of consumer disputes and to correct erroneous reporting that harms consumers' credit.  Given that the Court and the United States have already acknowledged that Congress intended to include the United States in some provisions of the Act, it was a clear error of law to hold Congress did not intend to include the United States as a "person" under §1681o when the result would not be absurd.  Plaintiff's argument, in a nutshell, is that the  although it may be absurd to hold government liable for criminal penalties, it is not absurd to hold United States civilly liable for actual damages. Therefore, the absurdity argument does not apply to 1681o and the Court erred in finding sovereign immunity was not waived in 1681o.

**ARGUMENT**

**I.      The Court Did Not Find The Language Of The Act To Be Ambiguous.[1]**

As in all statutory construction cases, the inquiry begins with the language of the statute.

*Clark v. Absolute Collection Service, Inc.*, 741 F. 3d 487, 488-90 (4th Cir. 2014) citing *Lamie v.*

*U.S. Tr.,* 540 U.S. 526, 534 (2004). "[W]hen the statute's language is plain, the sole function of

the courts — at least where the disposition required by the text is not absurd — is to enforce it

according to its terms." *Id.* (internal quotation marks omitted). Under well-established principles

of statutory construction, the Court must "give effect, if possible, to every clause and word of a

statute." *Clark* quoting *United States v. Menasche*, 348 U.S. 528, 538-39 (1955) (internal

quotation marks omitted). If possible, a court should avoid an interpretation that renders any

"clause, sentence, or word ... superfluous, void, or insignificant." *Clark* quoting *Duncan v.*

*Walker,* 533 U.S. 167, 174 (2001).

In order for a statute to be ambiguous, there must be at least two possible interpretations

for the language used in the statute. *See U.S. v. Selby*, 333 F.Supp.2d 367, 370 (D. Md. 2004)

("Generally, a court may find that '[a]mbiguity exists when a statute is capable of being

understood by reasonably well-informed persons in two or more different senses.'") (citations

omitted). Here, the language is undisputedly open to only one interpretation—that the United

States is "person" under the FCRA—and the defendant does not argue otherwise. Instead, the

defendant has argued that Congress must have made a mistake because the statute produces an

---

[1] Regarding the Court's finding that certain language in 15 U.S.C. §1681u would be superfluous and unnecessary if liability for the federal government were to be read wholesale into the FCRA, the Court overlooks the fact that Congress intended to limit liability in 1681u [Disclosures to FBI for counterintelligence purposes] to only "any agency or department of the United States…". Similarly, the Federal Torts Claims Act only applies to suits filed against the United States, so Congress was not making any distinction between different entities within the statute.

absurd result.   However, the test is not whether the interpretation would produce results deemed "absurd" by the Court, it is whether the language is ambiguous.   If the language is not ambiguous, as in this case, the Court should interpret the statute as it is written.

Even if the statute were ambiguous, *see Yi v. Federal Bureau of Prisons*, 412 F.3d 526, 533 (4th Cir. 2005) (Because the language of the statute is unclear, we may consult its legislative history as a guide to congressional intent.) (citations omitted), the legislative history shows that Congress intended to include the United States as a "person" under the Act. *See Ausar-El v. Barclay Bank Del.*, 2012 U.S. Dist. LEXIS 106572, *7 (D. Md. Jul. 31, 2012) citing Chiang v. Verizon New England Inc., 595 F.3d 26, 35 n. 7 (1 st Cir.2010) (quoting H.R.Rep. No. 108–263, at 24 (2003) (Furnishers of information typically are "'credit card issuers, auto dealers, department and grocery stores, lenders, utilities, insurers, collection agencies, and government agencies.'").

Furthermore, the proposed interpretation does not further the purpose of the FCRA, which is "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52, 127 S.Ct. 2201, 167 L.Ed.2d 1045 (2007). "The FCRA was the product of congressional concern over abuses in the credit reporting industry. The legislative history of the FCRA reveals that it was crafted to protect consumers from the transmission of inaccurate information about them, and to establish credit reporting practices that utilize accurate, relevant, and current information in a confidential and responsible manner. These consumer oriented objectives support a liberal construction of the FCRA." *Guimond v. Trans Union.,* 45 F.3d 1329, 1333 (9th Cir.1995). "Where the words and purpose of a statute plainly apply to a particular situation, however, the fact that the specific

application of the stature never occurred to Congress does not bar us from holding that the situation falls within the statute's coverage." *Church of Scientology of California v. U.S. Dept. Justice*, 612 F.2d 417 (9th Cir. 1979) quoting *U.S. v. Jones*, 607 F.2d 269, 273 (9th Cir. 1979).

Where "[t]here is no direct evidence in the legislative history that Congress specifically sought to exclude [government or governmental subdivision or agency] from the definition of [person, the Court] should not impute to Congress an intent to exclude the [United States] where they are within the plain meaning of the statute." *Church of Scientology*, 607 F.2d at 427. In this case, government agencies fall within the plain meaning of the statutes. Furthermore, their inclusion within §1681o furthers the statutory purpose of ensuring fair and accurate credit reporting. "The legislative history does not evidence an intent specifically to exclude [governmental agencies]. In these circumstances, we should give effect to the plain meaning of the statute even if Congress did not contemplate this particular application." *Id.*

## II.  The Court Did Not Find It Was Absurd To Hold The United States Liable For Actual Damages Under The Act.

### A.  The Court Erred By Conflating §1681o with §§1681n and 1681q

In its opinion, the Court held that the holding the United States liable under the specific provisions 1681n and 1681q produced absurd results, and therefore found that Congress did not waive sovereign immunity for United States in any other provision. *Robinson v. PHEAA*, 2017 WL 1277429, *3 (D. Md. Apr. 3, 2017) (Thus, in contrast to the Seventh Circuit's reading of the legislative history, the *Stellick* court did not read the history to express an unequivocal waiver. The court further reasoned that reading a waiver of sovereign immunity into the statute would impose punitive damages and criminal liability on the United States under § 1681n(a)(2) and §

1681q. *Id.* at *4. This consequence, in the court's view, "would be immense." *Id.*). Continuing, the Court noted a distinction between merely imposing liability for actual damages and imposing liability for actual damages and punitive and criminal damages. *Robinson*, 2017 WL 1277429, at *4 (Here, sweeping the federal government into every instance where the FCRA imposes liability on "persons" would expose the federal government not only to actual damages under § 1681*o*, but punitive damages under § 1681q and even criminal liability under § 1681q ("any person who knowingly and willfully obtains information on a consumer from a consumer reporting agency under false pretenses shall be lined under Title 18 imprisoned for not more than 2 years, or both"). It is inconceivable that Congress intended such a result absent a clear statement. *See Stellick*, 2013 WL 673856, at *; *Daniel,* 2016 WL 4401369, at *5.)

Importantly, the defendant and Court acknowledge that in certain provisions of the Act the word "person" does include United States. *Robinson*, 2017 WL 1277429, at *3 (The United States, as defendant in *Bormes*, argued that while it was a "person" for the purposes of the Act's substantive requirements. Congress did not intend for damages liability under § 1681n to also apply to the federal government.). Here, the Court notes that the United States was a "person" for the purposes of the Act's substantive requirements, but found Congress could not have intended to include the United States as a person liable for damages *under § 1681n*. Notably, there is no argument that the inclusion of the United States as a "person" liable for actual damages under §1681*o* could not have been intended. The reason for such absence is simply that it is well-established that the United States is regularly exposed to actual damages. *See, e.g., Baker v. Runyon*, 114 F.3d 668, 671-672 (7th Cir. 1997) citing 137 cong. Rec. H9527 (daily ed. Nov. 7, 1991) (interpretive memorandum of Rep. Edwards) (The damage provision "reinforces the clear

statutory intent that compensatory damages are available against federal, state and local governmental defendants to the same extent that they are available against private sector defendants; punitive damages are not.").

**B.** **Sovereign Immunity Is Waived Regularly For Actual Damages And It Was A Clear Error Of Law To Find United States Did Not Waive Sovereign Immunity For Actual Damages.**

It is undisputed that the United States regularly waives its sovereign immunity for actual

damages.[2] *See Talley v. U.S. Dept. of Agriculture*, 595 F.3d 754 (7th Cir. 2010); *Ordille v. U.S.*,

216 Fed. Appx. 160 (3rd Cir. 2007); *Moralez v. Vilsack*, 2016 WL 7404756 (E.D. Cal. Dec. 21,

2016); *Estate of Williams v. Vilsack*, 2016 WL 280280 (S.D. Mis. Jan. 21, 2016); *Stellick v. U.S.*

---

[2] In *Stellick*, the court opined "Congress often preserves sovereign immunity as to punitive damages even when it broadly and explicitly waives sovereign immunity as to actual damages. For example, the Federal Tort Claims Act, 28 U.S.C. § 2674, generally waives the sovereign immunity of the United States as to tort claims …)

In *Talley v. U.S. Dept. of Agriculture*, 595 F.3d 754 (7th Cir. 2010), the found held:

> According to the Department of Agriculture, this must mean that the Fair Credit Reporting Act displaces the Tucker Act. As we see things, however, it means only that punitive damages are unavailable against the United States unless the Tucker Act authorizes them. Statutes waiving sovereign immunity often limit recovery to actual loss; the Federal Tort Claims Act is an example. 28 U.S.C. § 2674 ¶ 1. That a substantive statute allows punitive damages does not make the waiver of sovereign immunity for compensatory damages vanish for the Tucker Act any more than it does for the Federal Tort Claims Act. See also *Werner v. Department of the Interior,* 581 F.2d 168 (8th Cir.1978).

In *Moralez v. Vilsack*, 2016 WL 7404756 (E.D. Cal. Dec. 21, 2016), the court found "the term 'creditor' as used in the ECOA includes the United States and thereby waives the United States' sovereign immunity for claims brought within the ECOA." *Id.* quoting *Shiplet v. Veneman*, 383 Fed.Appx. 667, 1 (9th Cir. 2010).

In *Benoit v. U.S. Dept. of Agriculture*, 577 F.Supp.2d 12 (D.D.C. 2008) the Court opined that "[t]he ECOA creates a private right of action against a creditor who discriminates against any applicant....". 15 U.S.C. § 1691(a); *see Garcia v. Johanns,* 444 F.3d 625, 629 n. 4 (D.C.Cir.2006). The statute defines the term "creditor" to include the United States government, *see* 15 U.S.C. §§ 1691a(e), (f), and thereby waives the United States' sovereign immunity for claims brought under the ECOA. *See Moore v. USDA,* 55 F.3d 991, 994–95 (5th Cir.1995); *Williams v. Conner,* 522 F.Supp.2d 92, 99 (D.D.C.2007).

In *Ordille v. U.S.*, 216 Fed. Appx. 160 (3rd Cir. 2007), the Court found the ECOA "creates a private right of action against a creditor, including the United States, 15 U.S.C. § 1691e(a), who 'discriminates against any applicant, with respect to any aspect of a credit transaction' 'on the basis of race, color, religion, national origin, sex or marital status, or age' or 'because the applicant has in good faith exercised any right under this chapter.' " *Id.* quoting *Garcia,* 444 F.3d at 629 n. 4.

In *Estate of Williams v. Vilsack*, 2016 WL 280280 (S.D. Mis. Jan. 21, 2016) the Court held "[t]he ECOA thus waived the sovereign immunity of the United States, permitting suits against the Government for discrimination in the provision of credit." *Id.* quoting *Ordille,* at 164.

*Dept. of Educ.*, 2013 WL 673856, \*4 (D. Minn. Feb. 25, 2013); *Benoit v. U.S. Dept. of Agriculture*, 577 F.Supp.2d 12 (D.D.C. 2008); *Robinson v. Schafer*, 2008 WL 1995354 (M.D. Ga. May 6, 2008). For example, when examining the Equal Credit Opportunity Act ("ECOA", prohibiting creditors from discriminating against applicants on the basis of race, color, religion, national origin, sex or marital status), several courts have held that the ECOA subjects the United States to civil liability for violations of the act based on reasoning which parallels Plaintiff's argument.  In *Moore v. USDA*, the Fifth Circuit explained that because the plain language of the ECOA defined "creditor" to include governmental agencies, that Congress clearly intended to subject the United States—when acting as a creditor—to liability under the statute. *Moore v. USDA*, 55 F.3d 991, 994 (5th Cir. 1995) ("We, like the parties, read the ECOA to include a broad waiver of governmental immunity. The plain language of the ECOA unequivocally expresses Congress' intentions: governmental entities are liable under the Act. *See* 15 U.S.C. § 1691a(e), (f) (respectively defining "creditor" to mean "person," and "person" to mean "government or governmental subdivision or agency")).  The same logic applies here.

Therefore, it was a clear error of law to find 1681o ambiguous or absurd.

**C. The Court Erred In Finding It Absurd To Expose The United States Liable For Punitive Damages.**

As noted above, where the Court did not find exposing the United States to damages liability under §1681o to produce an absurd result, it did find that exposing the United States to §§1681n and 1681q to be absurd. But, even in the *Stellick* case, an opinion in which this Court relied heavily upon, the court admitted that Congress has authorized punitive damages against the United States before. In relevant part, the Court found:

> [T]he FCRA permits courts to impose punitive damages on persons who willfully violate the FCRA. *See* 15 U.S.C. § 1681n(a)(2). But **Congress only infrequently authorizes the recovery of punitive damages against the United States**; indeed, Congress often preserves sovereign immunity as to punitive damages even when it broadly and explicitly waives sovereign immunity as to actual damages. … **It is conceivable that Congress intended to expose the United States to punitive damages under § 1681n**, but it appears more likely, given the legislative history described above, that Congress failed to realize that the FCRA could be read to expose the NSLDS to punitive-damages claims under § 1681n.

*Stellick v. U.S. Dept. of Educ.*, 2013 WL 673856, *4 (D. Minn. Feb. 25, 2013) (emphasis added).

Likewise, the Court erred in finding it absurd to hold the United States liable for criminal damages. First, it should be noted that absurdity is a high bar to reach. The Merriam-Webster diction defines as absurd as being "ridiculously un*reasonable, unsound, or incongruous* an absurd argument." Both a United States Court of Appeals and a United States District Court did *not* find the possibility that a government official could be subject to criminal prosecution for willful violations of the FCRA to be "so outlandish" as to ignore the plain definition of "person," and Plaintiff urges this Court to reconsider its contrary opinion. *See Bormes v. U.S.*, 759 F.3d 793, 796 (7th Cir. 2014) (The idea that a criminal prosecution of a federal employee alleged to have deliberately violated a federal statute might begin in state court is not so outlandish that we should read § 1681a(b) to mean something other than what it says. Federal employees' protection is the right to remove and have the adjudication in federal court, see 28 U.S.C. § 1442(a)(1), not a rule of construction that eliminates the possibility of prosecution altogether.); *Mooneyham v. Equifax Info. Srvcs., LLC*, 99 F.Supp.3d 720 (W.D. Ky. 2015).

### III.   The Court Erred By Attempting To Correct Congress's Mistake And Rewriting The Statue The Omit Certain Language From The Statute.

As previously noted, the Court found that although Congress included the United States as a person liable to punitive and criminal damages, it was highly unlikely that Congress intended to expose the United States to punitive and criminal damages. Stated another way, the Court found that Congress made a mistake by including the United States as a person liable under 1681n and 1681q. In order to correct Congress' mistake, the Court essentially made a finding that rewrote the statute to remove the United States from the definition of person for 1681n and 1681q. It was improper for this Court to attempt to correct Congress' mistake and its attempt to rewrite the statute is a clear error of law. *See Lamie v. U.S. Trustee*, 540 U.S. 526, 542 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. 'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result.' *United*

*States v. Granderson,* 511 U.S. 39, 68, 114 S.Ct. 1259, 127 L.Ed.2d 611 (1994) (concurring

opinion).[3]

## Conclusion

For the foregoing reasons, the Plaintiff respectfully requests the Court alter or amend its

April 3, 2017 Order and DENY the United States Department of Education's Motion to Dismiss.

Respectfully submitted

_____/s/_____

Quinn Breece Lobato,

---

[3] *See also CBS Inc. v. Prime Time 24 Joint Venture,* 245 F.3d 1217 (10th Cir. 2001) ("Those who ask courts to give effect to perceived legislative intent by interpreting statutory language contrary to its plain and unambiguous meaning are in effect asking courts to alter that language, and "[c]ourts have no authority to alter statutory language.... We cannot add to the terms of [the] provision what Congress left out." *Merritt,* 120 F.3d at 1187. "The language of the statute is entirely clear; and if that is not what Congress meant then Congress has made a mistake and Congress will have to correct it." *Conroy,* 507 U.S. at 528, 113 S.Ct. at 1572 (Scalia, J., concurring)); *U.S. v. Mount Sinai Medical Center of Florida, Inc.,* 486 F.3d 1248 (11th Cir. 2007) ("The language of the statute is entirely clear; and if that is not what Congress meant then Congress has made a mistake and Congress will have to correct it." *See CBS Inc.,* 245 F.3d 1217, 1228 (11th Cir.2001) (citation omitted); *Owner-Operator Independent Drivers Ass'n, Inc. v. U.S. Dept. of Transp.,* 724 F.3d 230 (D.C. Cir. 2013) ("The majority concedes that the statute here is unambiguous. Therefore, the cases on which it relies are all distinguishable. "The language of the statute is entirely clear, and if that is not what Congress meant then Congress has made a mistake and Congress will have to correct it." *Conroy v. Aniskoff,* 507 U.S. 511, 528, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring in the judgment).); *In re Meyer,* 355 B.R. 837 (Bnkr. D. Mex. 2006) ("We have stated time and again that courts must presume that a legislature says in a statute what it means and means in a statute what it says.... When the words of a statute are unambiguous, then, this first canon [of interpretation] is also the last: 'judicial inquiry is complete.'" *Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 253–54, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). (Citations omitted.) If it then turns out that Congress did not write what it meant to say, it must be Congress that rewrites the statute to fix the mistake. *Lamie,* 540 U.S. at 542, 124 S.Ct. 1023.)); *Aroostook Bank of Micmacs v. Ryan,* 403 F.Supp.2d 114, 130 (D. Me. 2005) (The language of the statute is entirely clear, and if that is not what Congress meant then Congress has made a mistake and Congress will have to correct it. We should not pretend to care about legislative intent (as opposed to the meaning of the law), lest we impose upon the practicing bar and their clients obligations that we do not ourselves take seriously."); *Jaskolski v. Daniels,* 427 F.3d 456, 462 (7th Cir.2005)("Boosting the level of generality by attempting to discern and enforce legislative 'purposes' or 'goals' instead of the enacted language is just a means to turn rules into standards.") ("Understandably the defendants would have this Court focus on the legislative intent, some of which clearly supports their position and conclude that the Band is subject to suit in the same manner as the Maliseets, but codifying that intent is a job for Congress and not this court. *See* *130 *Conroy v. Aniskoff,* 507 U.S. 511, 518–19, 527–28, 113 S.Ct. 1562, 123 L.Ed.2d 229 (1993) (Scalia, J., concurring) ("Judge Harold Leventhal used to describe the use of legislative history as the equivalent of entering a crowded cocktail party and looking over the heads of the guests for one's friends....).").

8583 Seasons Way
Lanham, MD 20706
(240) 305-4770
quinn.lobato@gmail.com
*Counsel for Plaintiff*